Millard L. Midoktick, J.
Has the Family Court initial jurisdiction over incestuous conduct between brother, 16 to 17 years of age, and sister, 12 to 13 years of age ? If so, shall such jurisdiction be retained in the Family Court, or in the exercise of discretion, transferred for criminal procedures under section 816 of the Family Court Act because the processes of the Family Court are inappropriate to the circumstances of this particular cause?
If the Family Court has initial jurisdiction over this type of unlawful conduct, criminal courts and grand juries are required to avoid action on the merits of the problem unless and until the Family Court shall have transferred the cause for criminal procedures after a hearing in which Family Court determines that its procedures are inappropriate. (People v. Johnson, 20 NY 2d 220; People v. Fowlkes, 24 N Y 2d 274, 287; Family Ct. Act, § 816.)
This is not a case of conduct by the male when under the age of 16 years, which would of course be cognizable as juvenile delinquency. (Family Ct. Act, § 731.) The respondent here is the son of the petitioning mother who complains on behalf of her infant daughter. The respondent was born on November 16, 1952. His sister was born on December 31, 1956. This brother and sister produced a baby born on February 8,1970. The baby was conceived approximately in May, 1969, at which time the respondent was several months over the age of 16 years,- and his sister 12.
The complaining mother filed an information in the Criminal Court of the City of New York, County of New York, on April 10, 1970, two months after the birth of the baby, alleging in effect both a delinquency and an adult crime, in that the inces *3 tuous conduct was indulged in by the respondent with his sister in violation of section 255.25 of the Penal Law, during the period from the summer of 1968 to the fall of 1969, respondent having attained 16 on November 16,1968. Incest is classified as a class “ E ” felony. (Penal Law, § 255.25.)
The facts as to the three birth dates above were stipulated, as was the relationship of respondent and his sister as siblings of the whole blood. It was further stipulated by counsel for respondent and by the complaining mother of the respondent, that findings and hearing for the purpose of fact finding were waived. (Family Ct. Act, § 835, subd. [a]) and that Family Court may proceed to a consent decree, i.e., a consent order of protection, as though the allegations of the petition were proved.
This respondent is merely accused, not of juvenile delinquency,[1] but of “ assault ” and private " disorderly conduct ” directed against a member of his family, wherefore the petitioner prays, not for a delinquency adjudication, but for an order of protection specifying conditions of behavior to be observed by respondent in accordance with sections 815 and 842 of the Family Court Act, and that the procedures of this court be utilized in an effort to adjust the family difficulties. The Legislature expressly gave as its purpose to create a “ civil proceeding ” to give “ practical help ” in the Family Court which ‘ ‘ is better equipped to render such help ’ ’ and to avoid a “ a criminal conviction”. (Family Ct. Act, § 811.) Such a respondent is conditionally protected against criminal proceedings, not only by “exclusive original jurisdiction” under Family Court Act, section 812, but also by the hitherto uncommented upon section 845, Family Court Act, which provides: “ When the terms of an order of disposition made under this article are satisfied, no criminal proceeding may be commenced with respect to the acts which would constitute disorderly conduct, harassment, menacing, reckless endangerment, assault or attempt [sp] assault on which the adjudication giving rise to the order of disposition was based.”
*4 While a guilty respondent, if the Family Court retains jurisdiction, may be subject to a suspended judgment, probation, or an order of protection (§§ 841, 842), he may not be incarcerated for the original misbehavior, in this ease, incest. Only upon his willful failure to obey any such order of the court, may the court, after another hearing and a finding by competent proof of the willful violation of the order, commit the respondent to jail for a term not to exceed six months (§ 846) and/or transfer him to criminal procedures (§ 845).
Did the Legislature intend to confer exclusive initial jurisdiction upon the Family Court and, in its sound discretion, to retain, or to transfer for criminal procedures, the unlawful conduct known as incest? The Supreme Court, in the Appellate Division for the Second Department, and at Special Term, has ruled in the negative in eases involving sodomy between members of the same household. (People ex rel. Doty v. Krueger, 32 A D 2d 845, affg. by memorandum 58 Misc 2d 428 [cousins] ; People v. Fuentes, 51 Misc 2d 354 [father and daughter].) While the lower court in Krueger attempts to weigh the seriousness of the felonious sexual misconduct as not within the ambit of assault and disorderly conduct, quoting the Court of Appeals in People v. Johnson (20 N Y 2d 220, 225) for the proposition that only mere “ domestic quarrels ” are removed “from the ambit of the criminal law” (58 Misc 2d 428, 429-430), that Special Term opinion fails to give controlling weight to the felonious assault despite which the indictment was invalidated in People v. Johnson (supra, p. 222). Under the former Penal Law, defendant Johnson was indicted for assault in the second degree, a felony, in that he assaulted his wife with a knife. The judgment of conviction was unanimously reversed by the Court of Appeals, the indictment dismissed and the matter transferred to the Family Court (p. 226). The Court of Appeals further stated (pp. 223-224): “ There is little danger that truly criminal conduct will be treated as a ‘ family offense ’ rather than as a crime and go unpunished. An order of the Family Court which denies transfer of the family offense proceeding to a criminal court is subject to review (Family Ct. Act, § 1012; see People v. Davis, 27 A D 2d 229, 305) and will undoubtedly be reversed if the retention of the case constitutes an abuse of discretion.”
The Appellate Division affirmed in Krueger (supra) “ on the opinion of the learned Justice at Special Term. We agree that proceedings concerning sodomy and sexual abuse, each in the first degree, committed between members [cousins] of the same household, are not transferable to the Family Court pursuant *5 to section 812 of the Family Court Act.”[2] The Appellate Division seems in Krueger to emphasize beyond the seriousness of the criminal conduct, the difference in quality between a felonious assault, and sodomy by a man upon his nine-year-old cousin. Perhaps such direct jurisdictional attention by the Supreme Court, by-passing Family Court, is justifiable, and if so, on another theory only, under subdivision a of section 19 of article VI of the Constitution of the State of New York: ‘ ‘ As may be provided by law,[3] the supreme court may transfer to itself any action or proceeding originating or pending in another court within the judicial department other than the court of claims upon a finding that such a transfer will promote the administration of justice.” But if the Supreme Court (not a grand jury) were to exercise its power to adjudicate a Family Court issue, the defendant must be afforded his right to a hearing on that issue: whether he is entitled to civil rather than criminal procedures (Kent v. United States, 383 U. S. 541); and any indictment would be vacated and void until after transfer to criminal procedures. (People v. Johnson, 20 N Y 2d 220, 222, supra.)
Subsequent to the Krueger decision by the Appellate Division of the Second Department, the Court of Appeals, as recently as April 9, 1969, has further illuminated the scope of ‘‘ assault ’ ’ when ‘ ' inextricably related with a common element ” of other unlawful conduct. In People v. Fowlkes (24 N Y 2d 274, 285, 287, supra) as in the case before us originating in the First Department, a judgment of conviction by the Supreme Court, on a plea of guilty to attempted assault in the second degree, a felony, and a sentence of 2 to 3% years in State prison, was unanimously reversed and the proceeding transferred to the Family Court. “ [The defendant] was accused of having broken into the apartment of a woman, now conceded to be his wife, and of stabbing her. He was indicted on two counts of assault, and counts of burglary and possession of a dangerous weapon ” (p. 285). Were the woman never his wife, Family Court would have no jurisdiction over the conduct known as “burglary” nor “possession of a dangerous weapon” with intent to use same unlawfully, since defendant was not a juvenile, being over the age of 16. The unanimous Court of Appeals reasoned that both burglary (i.e., breaking *6 and entering) and felonious possession of a dangerous weapon, rely on the assault, or the intent to commit it, as the only criminal element of mental culpability charged in the entire indictment (p. 386). The count concluded: “ Consequently, when assault and non-assault charges are inextricably related by a common element in the offenses, and not otherwise, the transaction lies in the first instance within the jurisdiction of the Family Court ” (p. 287).
But the new Penal Law since Fowlkes eliminated the need to prove an intent to commit a separate crime as an element of unlawful entry. (1 Mottla, New York Evidence, Proof of Cases [2d ed., 1966] [hereinafter cited as 1 Mottla], §§ 856, 857, 858, 859, 860.) Intent to commit a crime in the premises unlawfully entered, or unlawfully remained in, under this new Penal Law (§§ 140.05, 140.10 and 140.15) is no longer an element of the non-burglary or sub-burglary misdemeanor known since September 1,1967, as ‘ ' criminal trespass. ’ ’ That new crime is committed simply when a person knowingly enters or remains unlawfully in or upon real property. ‘ ‘ Unlawfully ’ ’ is defined as an unlicensed or unprivileged entry or remaining upon private property, or upon property open to the public after defying a lawful order not to enter or remain, communicated to him by the owner or other authorized person. (Penal Law, §§ 140.00, 140.05,140.10,140.15; 1 Mottla, §§ 856, 860.)
Suppose therefore, Fowlkes, estranged and living apart from his wife as he was, were to enter her dwelling, even by her invitation, for the lawful purpose of pleading for reconciliation, or for the lawful purpose of visitation of his children; then let us suppose, as alas too often is the case, that a peaceful disagreement ensues between Mr. Fowlkes and Mrs. Fowlkes, whereupon in fit of pique she orders him out of her dwelling, but he refuses to go. She calls the police; she charges him with criminal trespass in the second degree, technically correctly. In this hypothetical situation, there is no assault attempted or intended, none whatever. Perhaps his refusal to leave is “ disorderly ”, perhaps not. Should such a case be carried to the Court of Appeals, I dare say the Fowlkes decision will be refined to channel the issue initially into the Family Court, whether or not the husband coupled his refusal to leave his wife’s home with a harassing slap or disorderly words which terrify the children. Without any separate (or intrinsic) intent on the part of a respondent to assault, harass, menace, threaten, recklessly endanger or act in a disorderly manner toward his family, his intent to commit an offense of mere criminal trespass in the presence of his (or her) spouse or family member, particularly *7 if in the household, and if such offensive conduct creates tensions which are usually provocative of disorderliness, assault and the like, such discord is enough to invoke a legislative intent to open the door to Family Court help. Criminal trespass and criminal incest appear plainly to involve sufficient discord without more to invoke Family Court family offenses procedures, as the Legislature intended. The Legislature pointedly amended section 812 of the Family Court Act to specify: ‘ ‘ For purposes of this article, ‘ disorderly conduct ’ includes disorderly conduct not in a public place.” (L. 1964, ch. 156.) Translating such private, anti-family, conduct into the public proscriptions of the Penal Law, we note that section 240.20 of that law defines disorderly conduct as conduct “with intent to cause public [also private and anti-family] inconvenience, annoyance or alarm, or recklessly creating a risk thereof: 1. He engages in * * * threatening behavior; or 2. He makes unreasonable noise; or 3. In a public place [also, a private place if a family member is involved], he uses abusive or obscene language, or makes an obscene gesture; or * * * 7. He creates a hazardous or physically offensive condition by any act which serves no legitimate purpose.”
The essence of the Fowlkes decision is based upon the Legislature’s intention “ to provide an opportunity to reach and treat the roots of family discord, without separate and inconsistent procedures in different courts,” and its “ design was to bring such matters, in the first instance, to the Family Court.” (People v. Fowlkes, 24 N Y 2d 274, 278, supra.) “ Family discord ” as so used by the Court of Appeals is a far broader concept than “ domestic quarrels ”, the term relied upon in People ex rel. Doty v. Krueger (58 Misc 2d 428, 430, supra).
“ Family discord ” is a mild but accurate description of the concomitants and the sequelae of an incestuous liaison between a 16-year-old brother living with his 12-year-old sister until their baby is born; and when such incestuous baby is thereupon sheltered in the Foundling Hospital awaiting a decision of the Family Court as to the custody and treatment not only of the three minors but of the parents of the two minor parents. Such a family is shaken with ‘[1] discord ’ ’ indeed.
In its most recent focus upon the problem of incest itself the Court of Appeals, in commenting upon Fowlkes (burglary with intent to commit assault upon a wife, must begin in the Family Court), said in People v. Nuernberger (25 N Y 2d 179, 182-183) that the incest issue remains open:
“If there is to be a prosecution for an assault within the enumerated family group of any degree or for any purpose the *8 prosecution must begin in Family Court. (See, e.g., People v. Fowlkes, 24 N Y 2d 274.)
“ It is not necessary now to decide whether this jurisdictional issue affects incest, since in this case defendant was acquitted on that charge.[4]. It is a closer question whether it reaches a charge of endangering the morals of a minor, but since this offense does not itself come within the statutory definition of either assault or disorderly conduct and was essentially ' a different crime ’ from either (People v. Fowlkes, supra, p. 286), the Family Court did not have exclusive original jurisdiction although, as Fowlkes holds, there may be an interdependence which could affect jurisdiction.
“The evidence was sufficient to sustain the conviction for assault and of impairing the morals of a minor; and the court would sustain the conviction for assault except for the jurisdictional defect.
“ On the criminal appeal, the judgment should be modified by reversing the conviction for assault and that charge should be transferred to the Family Court of Erie County, and otherwise affirmed. On the appeal for denial of habeas corpus, the appeal should be dismissed, without costs, as moot.”
The element of impairing the morals of a minor, may have involved peaceful, not violent, conduct, perpetrated by the defendant father upon his 11-year-old daughter. Perhaps, therefore, the majority of the Court of Appeals which concurred in Nuemberger, used this as the point of distinction from Fowlkes. But disorderliness is as much a ground of Family Court jurisdiction as assaultiveness; impairing the morals of a minor daughter risks disorderliness and is itself disorderly, in private. (Family Ct. Act, § 812.) Nevertheless, the Court of Appeals majority seems preoccupied with the aspect of assault rather than the equally sufficient aspect of disorderliness. Thus their apparent distinction between incest and impairing the morals' of a minor may rest upon the ‘ ‘ inextricable ” “ interdependence ” of physical assault in the crime of incest, especially when the victim is under the age of consent, whereas morals of a minor may be impaired by nonphysical means. (Cf. 1 Mottla, supra, § 800.)
Disorderliness, without any trace of violence, has been the ground of a thoughtful and considered decision of the Appellate Division, Second Department, in Matter of Geraldine B. v. *9 Louis B. (32 A D 2d 808). As in the proceeding at bar, the mother filed a complaint in a criminal court (Nassau County District Court). The accused was also her 17-year-old son, as here. The charge was not incest, but of ‘ being a wayward minor in that he was ‘ wilfully disobedient * * * and * * * is in danger of becoming morally depraved ’ because he ‘ has been staying out all night, drinking and is consorting with others who are drinking and smoking marijuana. ’ ” A wayward minor is an offender under the terms of section 913-b of the Code of Criminal Procedure. Loitering for the purpose of using marijuana is a class “ B •” misdemeanor (Penal Law, § 240.36). The Appellate Division unanimously reversed on the law the transfer by Family Court to criminal procedures, holding (p. 809): “In our opinion, the alleged acts and conduct of appellant, as set forth in the complaint of his mother which initated the wayward minor proceeding in the District Court, constitute intrafamilial disorderly conduct within the ambit of section 812 of the Family Court Act. Hence, the Family Court has exclusive original jurisdiction of this matter and it was improper for the Family Court to transfer it to the District Court on the ground of lack of jurisdiction in the Family Court (Family Court Act, § 812; cf. People v. Johnson, 20 N Y 2d 220). And if we were not holding that the Family Court has exclusive original jurisdiction of this matter, we would have held that it has at least concurrent jurisdiction of the wayward minor proceeding, since any Magistrate, except a Justice of the Peace, can adjudge a person to be a wayward minor (Code Crim. Pro., § 913-b); and a Family Court Judge is a Magistrate (Family Ct. Act, § 151).” Since a person accused of moral depravity must be heard initially in the Family Court as a disorderly person, so must a person accused of incest. That incest is more serious than loitering with marijuana users is a consideration not affecting initial jurisdiction by Family Court, but instead weighing in favor of transfer to the criminal courts. A bill to transfer in the first instance all wayward minor jurisdiction to the Family Court as part of article 8 was introduced late in the recent session but failed to reach the consideration of the Legislature as a whole.
The need for this considerable body of jurisdictional litigation, of which Nuernberger is the latest of a plethora of decisions, arose from the decision of the Legislature to transfer from Home Term of the Magistrates’ Court in City of New York, and from its counterparts outside the city, to Family Court, intrafamily unlawful conduct, but limited to violent or disorderly conduct. The views of some who actually serve in *10 that area of our legal system supported initial consideration in Family Court of all crimes within the family, including such nonviolent conduct as larceny and fraud between spouses and household mates. Such an approach would have been simpler and perhaps more helpful to troubled families; but the intention of the Legislature to give only partial jurisdiction to the Family Court must guide us until amendment. However, it seems unwise to construe the intent of the Legislature restrictively not only because the usual canons of construction would warrant a full and liberal effectiveness to the legislative purpose, but also because this innovation of 1962 has proved one of the most imaginative and progressive methods of avoiding .the [1] ‘ crime of punishment ’ ’ and substituting prevention and treatment if appropriate in a noncriminal ambience — the Family Court.
It may be argued that all incestuous conduct must therefore be heard in the first instance in the Family Court, since by definition incest must occur only within the “family”, and most within the “ household ” as well. But even if most or all of such cases, of which there are, mercifully, only a few, were to be channeled through Family Court in the first instance, on balance this tabooed conduct with its bitter stigma had better be evaluated in the initial stage in Family Court.
Turning finally to the issue of whether the procedures of the Family Court are appropriate to retain and treat incestuous misconduct, each case must turn on its own merits. Obviously adult couples who continue by incestuous conduct to insist upon defying these laws, and who must be controlled to avoid incestuous offspring and revulsion by society, would be transferred to criminal procedures after Family Court hearing. But in the case before us now, the Criminal Court Judge himself, on first contact, in his wisdom transferred this matter to Family Court for a discretionary study of two young children who had erred; and both parties wanted Family Court help. Here we have an adult who will enforce the orders of the court in the homes of her children involved. Such a situation argues in favor of discretionary retention in the Family Court, whereas the transfer to criminal procedures would seem more likely to be appropriate when the offenders are adults without constant supervision in their home or homes; The complaining mother expressly stated in open court that she opposes incarceration or criminal procedures for her erring son, preferring the. controls, psychotherapeutic evaluation and treatment, and social work approach for her son and daughter, as well as for her own *11 problems; added to this she invokes the powers of the Family Court with respect to the custody of the three minors involved ■ — ■ the respondent boy, the 13-year-old mother, and the new-born incestuous baby. (N. Y. Const., art. VI, § 13, subd. b, par. [2]; Family Ct. Act, § 842; cf. Matter of Chin v. Yen, 4l Misc 2d 650.) If custody of the new infant becomes a problem, it can also be resolved by a paternity proceeding under sections 817 and 511 of the Family Court Act, by guardianship under sections 661, 662 and 663, or by adoption under sections 641 and 642.
Thus, the role of the Family Court can be important to restoring the various members of this family to useful and less encumbered lives. This family’s problems are totally unlike those of the Brennan family, where the Appellate Division found that in fact there was no role for Family Court to play after the manslaughter of a wife by a husband, since the deceased spouse cannot be reconciled, and also, since the defendant husband did not contend, in appealing from his conviction on his plea of guilty, “ that the son of the defendant and the victim were participants in or in any way involved in the quarrel ’.” (People v. Brennan, 33 A D 2d 139, 141.)
Of course, if the stigma even of a confidential Family Court determination as a civil decision is objected to (but in this case a consent order of protection ameliorates at least the stigma of a “finding”), respondents may well in some cases prefer to be transferred to criminal procedures where the difficulty of conviction might result in an acquittal. Under criminal procedures, proof must weigh beyond a reasonable doubt, and corroboration is a requisite, in proof of sexual misconduct. Except in delinquency cases where stigma plus the risk of incarceration for children requires such a high standard of proof (Matter of Winship, 397 U. S. 358), the fair preponderance rule would govern, as in family offenses where there is no initial risk of incarceration. (Family Ct. Act, § 832.) As for corroboration for proof of sexual misconduct, it should not be required for Family Court findings, except in delinquency determinations, because such a requisite would weaken the child protective features of article 10[5] (parental neglect or abuse of their children) and the family protective features of article 8 of the Family Court Act (assault or disorderliness within the family as in the case at bar). Under neither article 10 nor article 8 is incarceration an initial risk of the respondent; but *12 under both articles, irreparable harm may be alleged to have been done to members of the family by the perpetrator, usually to very young, vulnerable and defenseless persons. (Cf. Matter of Three “John” Children, 61 Misc 2d 347, 368.) No' one is likely to quarrel with the recent study, 'Child Neglect: Due Process for the Parent (70 Col. L. Rev. 465), except for the limitations implicit in the bias of its title in favor of parents; further inquiry as to aspects of due process for their minor children will round out a balanced approach. I agree that the dispositional phase of a child custody proceeding should rest upon competent (i.e., reliable), as well as relevant and material evidence. This is the parent’s right as well as the child’s right — the essential right that Judges be careful to adopt propositions of fact which are based only upon reliable evidence. But due process to parents in civil cases not involving incarceration (except for future misconduct in violation of an order to cease and desist), does not require special protective barriers peculiar to the shielding of criminally prosecuted defendants, such as requirements of corroboration of sexual misconduct or proof beyond a reasonable doubt. Indeed, such concepts would unbalance the scales of justice so unfairly as to deny due process to their minor children. (Cf. Matter of Three “John” Children, supra.) The Court of Appeals has felt so strongly that child custody requires fairness to the child above all, that it has recently established the unprecedented precedent that ex parte evidence will be admissible. In Matter of Lincoln v. Lincoln (24 N Y 2d 270, 273-274) the court held that “the entire issue is a most delicate one, but in weighing the competing considerations, we are convinced that the interests of the child will be best served by granting to the trial court in a custody proceeding discretion to interview the child in the absence [and over the objection] of its parents or their counsel. ’ ’ One parent won and the other lost custody, partly on the basis of evidence taken in confidence from their children, to avoid an unjustifiable emotional burden on the children and to enable them to speak freely and candidly concerning their preferences. The ends of justice required finding the truth, not meticulous protection of the parents’ rights, in the trial of an issue of child custody. It is wise to require the evidence to be sufficient and sound in a civil cause; it is folly to add the further need for the evidence to be redoubled (corroborated), for then the lack of redoubled evidence will lead inevitably to many false findings, as the rights of the victimized parties would be offered up upon the altar of special evidential privilege for the accused.
*13 Under the Penal Law, incest cannot he proved for convictioh, upon the uncorroborated testimony of the other party to the incestuous act or attempted act. (Penal Law, § 255.30; People v. Radunovic, 21 N Y 2d 186, 189; 1 Mottla, supra, §§ 799 and 800.) The misdemeanors known as sexual abuse in the second degree (Penal Law, § 130.60, subd. 2) as well as sexual misconduct (Penal Law, §§ 130.20, 130.05) are also within the factual allegations before us, but the same requirement of corroboration applies as pertains to incest. (Penal Law, § 130.15.) The mother confines the source of her information to having been ‘ ' informed by her daughter ’ ’, the female defiled. There may have been a confession involved, as it is alleged, but no inquiry has yet been made by the court as to whether such confession is admissible or suppressible. (Cf. Miranda v. Arizona, 384 U. S. 436; Matter of Gregory W., 19 N Y 2d 55.) A confession is sufficient corroboration for the proof of a crime against chastity. (People v. Hogue, 297 N. Y. 774; 1 Mottla, supra, p. 729.) Evidence of the birth of a baby, without a confession by the respondent or some other evidence connecting this brother as the father, is insufficient corroboration standing alone. (Cf. People v. Masse, 5 N Y 2d 217; People v. Croes, 285 N. Y. 279; People v. Anthony, 293 N. Y. 649; 1 Mottla, supra, p. 728.)
The strategy of an accused person preferring a greater ultimate risk in the criminal procedures, to gain the advantage of a more probable acquittal and thus the avoidance of stigma of a finding of incest by Family Court and to avoid controls by Family Court, is a choice which a respondent may urge and which Family Court can duly consider on the issue of transfer to criminal procedures. But the respondent in this case urged that Family Court retain jurisdiction, and pending psychiatric and probation evaluation, this court accepted the views of all parties.
In the initial Family Court hearing on April 17, 1970, no final determination was made to keep this matter in Family Court indefinitely. I ruled that ‘ ‘ in order to determine if the procedures of this Court are appropriate or inappropriate, i.e., whether respondent can and should be controlled and treated by an order of protection and probation supervision and psychiatric care in Family Court as a civil matter, the Probation Department shall investigate this boy’s grandmother’s and mother’s homes, and recommend what disposition to make for custody of both young parents, and for the incestuous baby born February 8, 1970 and now sheltered in Foundling Hos *14 pital.” (Family Ct. Act, § 816.) The probation report will be given to Family Court Mental Health Clinic doctors, and the two young parents and their mother and grandmother will be studied and evaluated by our psychiatric staff, and all reports will be made to me at the next dispositional hearing. Meanwhile, subject to modification, a temporary order of protection, (Family Ct. Act., § 815), copies to the respondent and his mother and grandmother, initially provides that respondent is forbidden to live in the home of his sister, or to approach her at any place except in court, and except when she is chaperoned by her mother, and then only for periods no greater than two hours per week to visit his mother where his said sister lives. He must not touch his sister. He must obey his mother and grandmother, co-operate with probation and court studies, mental health treatment and referrals, and he must live with his grandmother. He must attend school regularly and do his best school work. He is to have no companions unless each one is approved by mother or grandmother. His custody is temporarily awarded to his grandmother. The certificate of this order, in the hands of the two adults (petitioner and grandmother) and of the respondent, constitutes authority for any peace officer (1) to take into custody the respondent if charged with violating its terms and (2) otherwise to aid the petitioner and the grandmother to carry out its terms, and (a) to bring the respondent before this court for hearing and consideration of remand to detention or jail or for change of custody or other modification, and (b) for possible transfer to criminal procedures.
I have been informed in a previous similar case that pediatricians believe that after six months, an incestuous baby if then healthy, will have no further unusual physical problems. An emotional problem is to be avoided by shielding the incestuous child from knowledge of its origin because of taboo and stigma. The usual effort aims to consider the appropriate surrender (the 13-year-old mother will need a guardian appointed by this court, her own mother, for this purpose) for adoption, and then for the agency, in this case Foundling Hospital, to initiate the search for proper adoptive parents — after the baby’s sixth month. Distant relatives living far from this family and without contact with this family would also merit favorable consideration as prospective adoptive parents if adoption by strangers cannot be effected.

. By the stipulation for a consent decree, it was obviously not intended to reach back to unlawful sexual intercourse alleged to have commenced about the summer of Í968 (before the respondent was 16 years of age) for this would have defeated the protective purpose of the stipulation — to shield respondent from the risks of immediate incarceration as a juvenile delinquent under the quasi-criminal aspects of article 7 of the Family Court Act relating to juvenile delinquency. (Cf. Matter of Gault, 387 U. S. 1.) Thus, if found to be a juvenile delinquent for unlawful acts committed before his 16th birthday, the respondent can be deprived of his liberty by incarceration, for example in a State Training School. (Family Ct. Act, §§ 753, 756, 758; cf. Matter of Winship, 397 U. S. 358.)

. The authority of Krueger may have been affected by the Court of Appeals in People v. Nuernberger (25 N Y 2d 179) discussed infra, where the initial jurisdiction over incest was expressly not resolved. Sodomy and incest have similar physical aspects of assault and disorderliness.

. But compare CPLR 325.

. But the acquittal for incest may have been null and void if there was a jurisdictional defect as in People v. Johnson (supra), when the indictment was dismissed and the conviction reversed and the issue transferred to Family Court.

. Or the former article 3 of the Family Court Act.