*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 12-FM-1949

J.O., APPELLANT,

V.

O.E., APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(2012-CPO-3021)

(Hon. Jose M. Lopez, Trial Judge)

(Submitted December 12, 2013                    Decided October 2, 2014)

*David B. Salmons, Randall M. Levine*, *Margaret E. Sheer*, and *Stephanie Schuster* were on the brief for appellant.

O.E.*, pro se*.

*John S. Moot*, *Prashina J. Gagoomal*, and *Angela Kim* were on the brief for *amicus curiae*, Domestic Violence Legal Empowerment and Appeals Project and Victim Rights Law Center, in support of appellant.

Before GLICKMAN and EASTERLY, *Associate Judges*, and FARRELL, *Senior Judge*.

GLICKMAN, *Associate Judge*: J.O. appeals the Superior Court's denial of his petition for a civil protection order (CPO) against O.E. We conclude the trial judge failed to provide a sufficiently clear explanation for his decision and may

have relied improperly on O.E.'s testimony about his sexual orientation. Accordingly, we vacate and remand this case to the Superior Court for the judge to reconsider J.O.'s petition.

**I.**

Appellant J.O. lived in the basement room of a house in the District that he shared with several others. In the summer of 2012, appellee O.E. rented a room on the second floor. Not long after O.E. moved in, on August 23, 2012, J.O. filed a petition in Superior Court for a CPO, in which he alleged that O.E. had harassed, stalked, threatened, and made repeated sexual advances towards him. The court issued a two-week temporary protection order requiring O.E. to vacate the residence and remain at least 100 feet away from J.O., and thereafter held a hearing on the petition at which both J.O. and O.E. testified.

J.O. testified to three incidents of sexual harassment and assault, all allegedly occurring in early August. Specifically, J.O. claimed that O.E. had exposed himself, propositioned J.O. for sex, physically assaulted him with his hand and genitalia, and threatened him with "trouble" in connection with J.O.'s supposed status as an undocumented immigrant if he did not yield to O.E.'s sexual advances. O.E. adamantly denied the alleged incidents and claimed that J.O.'s

accusations were fabrications designed to get him evicted from the house because J.O. jealously suspected him of romantically pursuing one of their housemates. In addition, O.E. repeatedly and vehemently insisted that he was heterosexual.

In an oral ruling delivered from the bench, the trial judge found that J.O. had failed to prove by a preponderance of the evidence that O.E. had committed an intrafamily offense. The judge explained that both witnesses had "testified with a lot of strength of character, with a disposition of resolve that they are both correct." "[J]udging from the demeanor of each of the parties," the judge added, he had "major difficulties" finding that the evidence weighed in favor of either side. Ultimately, though, in light of "the strength of character and the demeanor" of each witness and their conflicting testimony, the judge declared the evidence in equipoise—"equally balanced in the mind of the finder of fact."

In discussing O.E.'s testimony, the judge paid particular attention to his having "steadfastly put [on] a very strong defense that he is not gay." The court found this "not irrelevant from the perspective that while he's telling the Court that he does not have a homosexual orientation. And since he doesn't have a homosexual orientation, he is not going to approach [J.O.] for sex." Elaborating on O.E.'s insistence that he was "not oriented towards homosexuality," the judge

stated: "Now obviously I cannot say what does a homosexual look like. No such thing exists. It is an orientation in the person and he has strongly, steadfastly, with great conviction, indicated that he's not so oriented."

J.O. moved for reconsideration, arguing that O.E.'s purported heterosexuality was irrelevant to the question of whether O.E. had sexually assaulted J.O., and also that O.E.'s testimony as to his sexual orientation constituted inadmissible propensity evidence.[1] In a short written order denying the motion, the judge acknowledged J.O's contention that "the court erred in considering [O.E.'s] purported heterosexuality as evidence that the sexual assaults alleged in the petition did not occur."[2] The judge did not deny having done so. "However," the judge stated, "this was not the only consideration the court took into account. In addition to the evidence offered by both parties, the Court took

---

[1] Alternatively, if the judge disagreed with those propositions, J.O. asked the judge to reopen the hearing on his CPO petition so that he could present evidence of O.E.'s "homosexual and abusive nature."

[2] The order did not acknowledge or address J.O.'s alternative request to reopen the hearing to take additional evidence.

into account credibility concerns" in finding that J.O. did not meet his burden of proof.[3]  J.O. noticed a timely appeal.

## II.

Under the Intrafamily Offenses Act,[4] a person "who alleges . . . that he or she is the victim of interpersonal, intimate partner, or intrafamily violence, stalking, sexual assault, or sexual abuse" is empowered to seek a civil protection order against the offender.[5]  "Interpersonal violence" includes criminal offenses committed by an offender with whom the victim "shares or has shared a mutual residence . . . ."[6] The petitioner need not have had a previous relationship with the

---

[3]  The judge did not identify his "credibility concerns" in his order.  In his initial ruling from the bench, he mentioned only two, seemingly peripheral, "credibility issues."  The first was J.O.'s confusion as to when during the summer he first met O.E.  "He didn't have complete clarity of mind," the judge commented.  The second was O.E.'s inability to explain why he left the home in which he had been living for more than three years to rent a room at J.O.'s house. The judge found that "Mr. [O.E.] is just not clear as to why he rented there."

[4]  D.C. Code § 16-1001 *et seq*. (2012 Repl.).

[5]  *Id.* § 16-1001 (12).

[6]  *Id.* § 16-1001 (6); *see also Shewarega v. Yegzaw*, 947 A.2d 47, 52 (D.C. 2008).

alleged offender.[7] The court may grant the CPO if it is shown by a preponderance of the evidence that "there is good cause to believe the respondent has committed or threatened to commit a criminal offense against the petitioner."[8]

We review the denial of a petition for a CPO for abuse of discretion.[9] In exercising its discretion, the trial court is obliged to consider all relevant factors and not rely on any improper factors,[10] and to base its decision on "a sufficient factual basis and substantial reasoning."[11] The court must rest its decision on "correct legal principles."[12] In the present case, the trial judge's explanations for denying the CPO leave us uncertain, and in doubt, as to whether the judge fulfilled those obligations.

---

[7] *See A.R. v. F.C.*, 33 A.3d 403, 404-05 (D.C. 2011).

[8] D.C. Code § 16-1005 (c); *see also Cruz-Foster v. Foster*, 597 A.2d 927, 930 & n.3 (D.C. 1991) (holding that a CPO petitioner has "the burden of showing good cause by a preponderance of the evidence").

[9] *See Murphy v. Okeke*, 951 A.2d 783, 789 (D.C. 2008).

[10] *See id*; *Johnson v. United States*, 398 A.2d 354, 365 (D.C. 1979).

[11] *Mercer v. United States*, 724 A.2d 1176, 1185 (D.C. 1999).

[12] *Cruz-Foster*, 597 A.2d at 932.

As the trial judge seemed to recognize, J.O.'s testimony, if credited, established that O.E. committed intrafamily offenses that would justify a CPO. The reasons the judge nevertheless denied the petition are unclear. It is quite easy to understand the judge's rulings the way appellant does—as crediting O.E.'s testimony that he is not homosexual and accepting and relying on the syllogism that (in the judge's words) "since he doesn't have a homosexual orientation, he is not going to approach [J.O.] for sex." This rationale is problematic, however, even assuming that O.E.'s testimony was admissible[13] and amounted to his denial of one possible motive (a desire for sexual gratification) for committing the alleged offenses. The basic problem is that the syllogism articulated by the judge is simplistic and unsound. There is no doubt that same-sex (male) sexual assaults and harassment are committed, not infrequently, by individuals who believe

---

[13] The usual common law rule in civil cases, succinctly codified in Federal Rule of Evidence 404 (a), is that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." *See* Kenneth S. Broun et al., McCormick on Evidence § 188 (7th ed. 2013). *But see District of Columbia v. Thompson*, 570 A.2d 277, 299 (D.C. 1990), *vacated in part on other grounds*, 593 A.2d 621 (D.C. 1991) (allowing, as an exception to the general rule, "evidence of the peaceful or violent character of the parties in civil assault cases in which mutual assault is alleged in order to help prove who was the aggressor").

themselves to be straight.[14]   Among other reasons, this reflects the fact that strong sexual attraction may co-exist with a refusal or inability to acknowledge it, and that sexual assaults may have motives other than sexual attraction—for example, they may be committed with the "intent to abuse, humiliate, harass, [or] degrade" the victim.[15]   For these reasons, in the circumstances of this case, O.E.'s heterosexual orientation simply was not substantially probative of whether he sexually assaulted J.O.[16]   If the judge based his ruling on this mistaken logic, he erred.

---

[14] *See, e.g.*, Men & Sexual Trauma, National Center for PTSD, Dep't of Veterans Affairs, Jan. 3, 2014, http://www.ptsd.va.gov/public/types/violence/men-sexual-trauma.asp (last visited Aug. 14, 2014) ("Despite popular belief that only gay men would sexually assault men or boys, most male perpetrators identify themselves as heterosexuals and often have consensual sexual relationships with women."); Elizabeth J. Kramer, *When Men Are Victims: Applying Rape Shield Laws to Male Same-Sex Rape*, 73 N.Y.U. L. Rev. 293, 315 (1998) ("Neither the victims nor the perpetrators of same-sex rape are necessarily homosexual.  Studies indicate that victims of same-sex rape are often heterosexual, as are same-sex rapists. Furthermore, like opposite-sex rapists, same-sex rapists are more interested in their dominance over their victim than in the 'sexual' aspect of the assault. Male same-sex rapists are thus often indifferent to the gender of the person they rape.") (footnotes omitted); Bennett Capers, *Real Rape Too*, 99 Cal. L. Rev. 1259, 1274 n.92 (2011) ("As with prison rape, most men who sexually assault other men outside of prisons appear to identify as heterosexual.") (citation omitted).

[15] D.C. Code § 22-3001(9) (defining sexual contact).

[16] By the same token, we would consider evidence that O.E. was in fact homosexual to be equally unilluminating.

However, despite the judge's considerable emphasis on O.E.'s purported heterosexuality, and the judge's failure on reconsideration to deny that it was a material factor in his decision, he did cite other factors as well: "the strength of the character and the demeanor" of each party, and (perhaps somewhat inconsistently) "credibility concerns" unrelated to O.E.'s sexual orientation. Regrettably, the judge did not clarify further the basis of his ruling. But—granting the judge the benefit of the doubt—we think the judge *may* have found O.E.'s denial of the charges against him to be credible, and the evidence in equipoise, not *because of* O.E.'s asserted heterosexuality, but rather based on the apparent sincerity of O.E.'s protestations and his overall credibility, combined with the fact that J.O.'s testimony was uncorroborated.

In the end, the judge's explanations of his ruling are too cryptic and opaque for us to understand his rationale. But because there is a real possibility the judge relied improperly on O.E.'s purported sexual orientation as proof that he did not commit the alleged offenses, we vacate the decision denying J.O.'s petition for a CPO and remand the case for the judge to make a determination without reliance on a flawed rationale. This "should result in the entry of more comprehensive

findings of fact and conclusions of law."[17]  If need be, the judge may reopen the hearing to take additional evidence.[18]

<em>So ordered.</em>

---

[17]  *Cruz-Foster v. Cruz*, 597 A.2d 927, 932 (D.C. 1991) (vacating and remanding the denial of a CPO extension where we were uncertain whether the judge took into account the universe of relevant facts).

[18]  *See id.* ("Since any CPO which may be entered will look to the future, the judge is of course authorized to conduct further proceedings to determine whether there have been any developments since she last heard the case which would affect [the CPO petitioner's] right to relief.").