*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-FM-1006

ALFREDO SALVATTERA, APPELLANT,

V.

ISELA RAMIREZ, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CPO-1015-14)

(Hon. Fern Flanagan Saddler, Trial Judge)

(Argued February 26, 2015                Decided March 26, 2015)

*Stefanie Schneider*, Public Defender Service, with whom *James Klein* and *Samia Fam*, Public Defender Service, were on the brief, for appellant.

*Luke A. Meisner*, with whom *Gregory B. Craig*, *Stephen J. Harburg*, *Donald P. Salzman*, *Daniele M. Schiffman*, and *Rachel L. Jacobs* were on the brief, for appellee.

Before GLICKMAN and FISHER, *Associate Judges*, and STEADMAN, *Senior Judge*.

FISHER, *Associate Judge*: Alfredo Salvattera appeals from the issuance of a civil protection order ("CPO") that directed him to vacate his apartment. He principally contends that the court lacked the statutory authority to issue such an

order under the Intrafamily Offenses Act, D.C. Code §§ 16-1001 to -1059 (2012 Repl.). We affirm the trial court's decision.

## I.    Background

After an evidentiary hearing, Judge Saddler found the following relevant facts.[1] Appellee Isela Ramirez lived on the third floor of a small apartment building in Northwest Washington with her father and her two children. Appellant lived in an apartment on the first floor. The two knew each other because appellant acted as a building manager.

Appellee's father sometimes had trouble paying rent, and on October 26, 2013, appellant sent Ms. Ramirez a text message stating that he wanted to discuss the rent with her father. Two days later, at around 10:00 p.m., she went to appellant's apartment to talk to him about the text message. During the course of their hour-long conversation, appellant gave her three glasses of sangria. Five

---

[1] When addressing appellant's motion for a stay pending appeal, this court thoroughly discussed the facts and the issue of statutory interpretation that is central to this case. *Salvattera v. Ramirez*, 105 A.3d 1003 (D.C. 2014). We write more briefly here, inviting the reader who seeks more detail to consult the majority and dissenting opinions issued by the motions panel.

minutes after drinking part of the third glass, which tasted bitter, she developed a strong stomachache, vomited blood, and passed out.

Ms. Ramirez awoke the next morning in appellant's bed, naked from the waist down. Appellant was standing beside the bed, holding her clothing. When appellee asked him what happened, he said they both got naked and "what had to happen, happened." He also said that he never did anything to her.

Ms. Ramirez fled the apartment. Later that day, she went to a hospital where she was examined by a nurse and interviewed by the police. The examination found no forensic evidence of sexual assault.

After that night, appellee experienced panic and anxiety attacks whenever she saw appellant. Nonetheless, she continued to live in the building because her father was there and could not be left alone. In January, her father moved out; appellee and her two children later moved to a shelter because she did not feel safe living so close to appellant.

On March 28, 2014, appellee filed a petition for a CPO pursuant to D.C. Code § 16-1005 (c), alleging that appellant had sexually assaulted her. The

petition requested, among other things, that the court order appellant to vacate his apartment. On August 26, 2014, after nine days of hearings, the trial court granted the petition, ordering appellant not to assault, threaten, harass, or stalk appellee; to stay at least 100 feet away from her; not to contact her; and to vacate his apartment by September 12, 2014.

On September 3, 2014, appellant filed a motion pursuant to D.C. Super. Ct. Civ. R. 59 (e) asking the trial court to remove the requirement that he vacate his apartment. That motion was denied. Appellant then timely appealed the CPO. He also filed a motion for a stay, which this court granted on December 15, 2014. *See Salvattera v. Ramirez*, 105 A.3d 1003, 1009 (D.C. 2014).

## II.     Analysis

### A.     Authority to Issue the Vacate Order

Appellant contends that the trial court had no authority to order him to vacate his apartment. Judge Saddler specifically addressed that issue when denying his Rule 59 (e) motion, first noting that the Intrafamily Offenses Act explicitly authorized the stay-away provision of the protection order. *See* D.C.

Code § 16-1005 (c)(2) (2012 Repl.).  She then recognized that it would be difficult to enforce the stay-away order because there was only one staircase in the apartment building, and appellee had to come within a few feet of appellant's apartment when going to and from her apartment.

The stay-away provision would therefore be frustrated unless appellant vacated his apartment, and Judge Saddler concluded that ordering him to do so was a valid exercise of authority under the catch-all provision of the statute, D.C. Code § 16-1005 (c)(11).  That provision provides, without elaboration, that a court may "[d]irect[] the respondent to perform or refrain from other actions as may be appropriate to the effective resolution of the matter . . . ."  D.C. Code § 16-1005 (c)(11) (2012 Repl.).

We have long recognized that the Intrafamily Offenses Act "is a remedial statute and as such should be liberally construed for the benefit of the class it is intended to protect."  *Maldonado v. Maldonado*, 631 A.2d 40, 42 (D.C. 1993).  Because a protection order "was designed to protect victims of family abuse from acts and threats of violence," the act "gives the court 'a wider range of dispositional powers than criminal courts in order to effect rehabilitation rather than retribution.'"  *Cruz-Foster v. Foster*, 597 A.2d 927, 929 (D.C. 1991) (quoting

*United States v. Harrison*, 149 U.S. App. D.C. 123, 124, 461 F.2d 1209, 1210 (1972)).

The catch-all and stay-away provisions of the current statute are nearly identical to their counterparts in the original act passed in 1970. *Compare* District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub. L. No. 91-358, § 131 (a), 84 Stat. 473, 547 (1970), *with* D.C. Code § 16-1005 (c)(2), (11) (2012 Repl.). At that time, the statute did not explicitly mention ordering a respondent to vacate a dwelling. In 1980, however, Judge Schwelb, then a judge of the Superior Court, opined that "[a]n order excluding [a] husband from the [marital] home would be well within the Court's discretion" under the stay-away provision. *LaPrade v. LaPrade*, 108 Daily Wash. L. Rptr. 1773, 1779 (Super. Ct. D.C. 1980) (citing former D.C. Code § 16-1005 (c)(3) (1973)). He also noted that two other judges who handled the same case had come to the same conclusion. *Id.* Thus, at least some trial judges interpreted the original statute broadly enough to include the authority to issue orders to vacate.

Notwithstanding the *LaPrade* decision, many critics asserted that the courts were interpreting their statutory power so narrowly that they were not issuing effective protection orders. D.C. Council, Report on Bill 4-195 at 10 (May 12,

1982).  In response to that concern, the Council of the District of Columbia, in 1982, added six provisions to the portion of the act describing remedial measures. *Id*. at 6-7.  One of those provisions was D.C. Code § 16-1005 (c)(4), which provides that a CPO may "[d]irect[] the respondent to refrain from entering, or to vacate, the dwelling unit of the petitioner" if the petitioner has one of four enumerated property interests in the unit.  D.C. Code § 16-1005 (c)(4) (2012 Repl.).

The committee report on the 1982 bill acknowledged repeated criticism "that the current interpretation of D.C. Code, sec. 16-1005 by the local courts has been extremely narrow . . . ."  *Id.* at 10.  It explained that the six remedial provisions added to the statute were "designed to meet the stated need in the public record for the court to be guided more specifically as to what remedies can be afforded to the public," *id.*, implying that those remedies were already authorized by the original statute.  On the other hand, the report said that § 16-1005 (c)(4) was one of "six new statutory remedies" being "created for issuance as the court deems just and appropriate," *id.*, implying that they were new remedies.

As a result, the legislative history of the 1982 amendments sends mixed signals about their purpose and effect.  But nothing in the legislative history or the

amending language clearly states that the newly added subsection (c)(4) is the only source of the court's authority to order a CPO respondent to vacate his residence. This court has previously and consistently recognized that "the plain intent of the legislature [in amending the Intrafamily Offenses Act] was an expansive reading of the Act, which we think must be accorded to the catchall provision as well." *Powell v. Powell*, 547 A.2d 973, 974 (D.C. 1988). Moreover, the committee report described the catch-all provision as "a very broad one," and the provision itself remained unchanged. Report on Bill 4-195 at 10 n.*.

We conclude that the Council intended § 16-1005 (c)(4) to focus on the frequently occurring circumstances where the petitioner and respondent were living together. In this paradigmatic situation, the court often would have to decide whether the petitioner or the respondent should be required to leave the common dwelling. By regulating this situation so closely, however, the Council did not intend subsection (c)(4) to become the exclusive source of the court's authority to order a respondent to vacate a dwelling. Instead, situations that § 1005 (c)(4) did not specifically address—namely those where an order to vacate might be appropriate but the petitioner and respondent did not live together—remained within the purview of the stay-away and catch-all provisions of the statute.

The statute is no longer confined to intrafamily violence, but currently permits "any person who alleges . . . that he or she is the victim of interpersonal, intimate partner, or intrafamily violence, stalking, sexual assault, or sexual abuse" to request a protection order. D.C. Code § 16-1001 (12) (2012 Repl.). It thus reaches persons like Ms. Ramirez who have never lived with their assailant. Emphasizing that the Council has not expanded § 16-1005 (c)(4) when enlarging the class of petitioners covered by the statute, appellant argues that the remedy of ordering the respondent to vacate his residence is simply not available in these circumstances.

It certainly is true that an order to vacate will most often be necessary when the petitioner and the respondent have been living together. However, when broadening the reach of the Intrafamily Offenses Act, the Council gave no indication that it intended to withhold any appropriate remedy from new classes of petitioners. Instead, it clearly intended that those changes would make the protections of the act available to more people. *See, e.g.*, D.C. Council, Report on Bill 17-55 at 2 (Nov. 25, 2008) (amendment was designed to give petitioners relief even if they were not in an intrafamily relationship with the respondent).

Our task surely would be simpler if the legislature had specifically addressed situations like the one presented in this case. But it is understandable that the Council did not do so. It probably would have been futile to try to address in detail every situation that might come before the court, and the Council prudently left the catch-all provision intact to cover circumstances outside the normal pattern. Such provisions cover matters not specifically addressed by the legislature, *see Republic of Iraq v. Beaty*, 556 U.S. 848, 860 (2009), and "act as a safety net, offering appropriate equitable relief caused by violations that [the statute] does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996).

In *Robinson v. Robinson*, 886 A.2d 78 (D.C. 2005), this court recognized the broad authority conferred by the statute. In that case, the petitioner and respondent were a married couple who owned two neighboring houses. 886 A.2d at 79. The trial court ordered the husband to stay away from the home the two shared, but refused to order him to stay away from the neighboring house. *Id.* at 83-84. This court concluded that requiring the husband "to vacate the marital home, but allowing him to live right next door, seems inadequate to accomplish the broad remedial purpose of the Intrafamily Offenses Act, that is, to protect victims of . . . abuse from both acts and threats of violence." *Id.* at 86.

Remanding the case so the trial court could re-evaluate the situation, we recognized that the statute "clearly envisions allowing safety concerns to trump property rights." *Id.* at 86-87. We did not definitively interpret the statute, but we clearly implied that the statute was broad enough to allow a trial court to order a respondent to leave a dwelling that he did not share with the petitioner. *Robinson* may not control our decision, but it helpfully informs it.

Given the history and broad remedial purpose of the Intrafamily Offenses Act, we hold that D.C. Code § 16-1005 (c)(11) authorizes a trial court to order a respondent to vacate his or her dwelling if that is necessary to effectuate a stay-away order. While we again emphasize that "ordering a person to vacate his or her home or denying the use of owned property is a serious step, not to be lightly undertaken," *Robinson*, 886 A.2d at 86, it can be a necessary measure to ensure the effectiveness of a stay-away order issued under § 16-1005 (c)(2).

## B. Remaining Issues

A court may issue a CPO "if it is shown by a preponderance of the evidence that 'there is good cause to believe the respondent has committed or threatened to commit a criminal offense against the petitioner.'" *J.O. v. O.E.*, 100 A.3d 478, 481

(D.C. 2014) (quoting D.C. Code § 16-1005 (c) (2012 Repl.)). The trial court found good cause to believe appellant had committed misdemeanor sexual abuse, which required a showing that appellant engaged in a sexual act or sexual contact with appellee, and knew or should have known he did so without appellee's permission. D.C. Code § 22-3006 (2012 Repl.). "Sexual contact" is defined as "the touching with any clothed or unclothed body part or any object, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." D.C. Code § 22-3001 (9) (2012 Repl.).

Contrary to appellant's argument, there was sufficient evidence that he committed misdemeanor sexual abuse. During the evidentiary hearing, appellee testified about previous occasions where appellant made remarks about wanting to "have" her and dreaming of her in a red dress, statements which the court rightly considered when evaluating his intent on the night appellee visited him. *See Robinson*, 886 A.2d at 87 (requiring court to look at the "entire mosaic of facts" when considering whether to issue a CPO). The court credited her testimony regarding those incidents and the night of October 28, 2013, and found that it was more likely than not that appellant had removed appellee's pants and underwear and put her into his bed with the intent to gratify his sexual desire.

Appellant rightly contends that removal of a person's pants and underwear does not necessarily require the touching of an area of the body listed in the statute. However, the finder of fact is allowed to draw inferences based on circumstantial evidence. *See Williams v. United States*, 756 A.2d 380, 387 (D.C. 2000) ("This court must . . . accord equal weight to circumstantial evidence and direct evidence."). The trial court could reasonably infer that appellant more likely than not touched one of the prohibited areas when removing appellee's clothing.

Finally, appellant contends that the trial court gave too much weight to appellee's peace of mind and not enough to appellant's right to remain in his home. Because the statute is specifically aimed at preventing future injury, "the trial court, in the exercise of its discretion, should only enter a CPO against a party for reasons consistent with the underlying purposes of the Intrafamily Offense[s] Act." *Murphy v. Okeke*, 951 A.2d 783, 786 (D.C. 2008). In keeping with the act's remedial nature, a court must consider the "balance of harms" between the petitioner and the respondent. *Cruz-Foster*, 597 A.2d at 930 (internal quotation marks omitted).

Ordering a person to vacate his or her home is a very serious step indeed, but "when the trial court finds that [qualifying] offenses have been committed or are imminent, it can be a necessary measure to ensure peace and safety." *Robinson*, 886 A.2d at 86. The trial court specifically found that appellee would have to pass by appellant's apartment every time she used the staircase to go to or leave her apartment, and concluded that the order to vacate was necessary to effectuate the stay-away provision of the CPO and thus protect appellee's peace of mind and safety. *See Maldonado*, 631 A.2d at 43 (important factor in issuing a CPO is whether it "provides a measure of peace of mind for those for whose benefit it was issued"). In making those findings, the court was well aware that ordering appellant to vacate his apartment was a serious measure and that he was employed in some capacity by the building's landlord. The court also considered alternative measures suggested by appellant and rejected them.

"Discretion signifies choice," and even though "the act of choosing will be guided by various legal and other considerations," "the decision-maker can rely largely upon his [or her] own judgment in choosing among the alternatives." *Johnson v. United States*, 398 A.2d 354, 361 (D.C. 1979). Given the record at the time the protection order was issued, the trial court did not abuse its discretion in ordering respondent to vacate his apartment.

### III. Conclusion

Because the protection order in this case was properly issued, we lift the stay previously granted. The judgment of the Superior Court is hereby affirmed. We note, however, that the date established for appellant to vacate his apartment has long passed, and the trial court will need to set a new date in order to enforce the order.[2]

---

[2] Representations made at oral argument indicate that Ms. Ramirez has not lived in the apartment building since the early part of 2014, and that since the CPO was issued, landlord-tenant litigation has called into question her right to return to her apartment. We do not take those events into account because they are not reflected on the record before us. We note, however, that a change in the parties' circumstances might affect the need for a protection order or alter the balance of harms. In such cases, the respondent may request a modification of the CPO. *See* D.C. Code § 16-1005 (d) (2012 Repl.) (court "may, upon motion of any party to the original proceeding, extend, rescind, or modify the order for good cause shown").