McLEESE, Associate Judge:
Appellant Edmund Fleet challenges the trial court’s order granting a civil protection order (CPO) 'to appellee Ericka Fleet and denying a CPO to Mr. Fleet. We affirm. • ’
I.
Mr. Fleet and Ms. Fleet were married in 2010 and separated-in 2013. They have a child in common who was born in 2013. In connection with an ensuing divorce action, the trial court granted Ms. Fleet temporary custody over the child, with scheduled visitation for Mr.' Fleet. In March 2014, Ms. Fleet and Mr. Fleet each filed a petition for a CPO against the other. The trial court held a hearing on.the petitions. In pertinent part, the evidence at-the hearing was as follows. ■
On March- 4, 2014, at a hearing in the divorce matter, the trial court addressed interim arrangements with respect to the Fleets’ ears. Mr. Fleet wanted to arrange an exchange of the cars that each possessed at that time. The parties could not agree,- so the trial court stated that “[everything stays .status quo.” On the morning of March 10, 2014, Ms. -Fleet went with the child to the parking lot outside of Mr. Fleet’s place of work. Ms. Fleet intended to take possession of the car that Mr. Fleet had been driving, which was titled in her name. After Ms. Fleet placed the child in the back seat of the car, Mr. Fleet came out of the building and sat in the front seat of the-car.
Ms. - Fleet testified that she told Mr. Fleet to leave the car, but he ignored her and instead screamed to a bystander to call the police and to videotape the- incident. Ms. Fleet asked Mr. Fleet to let her leave with the child, but Mr; Fleet refused and insisted that .they wait until the police arrived. ' Ms. Fleet called the police, because Mr. Fleet would not let the child out of the car; The police arrived after five or ten minutes and determined that Ms. Fleet was the owner of the car. The officers therefore told Mr. Fleet that Ms. Fleet could take the car and that he should remove his belongingsTrom the car.'
‘ Mr. Fleet then took the child out of the car and into his office building. The officers asked Ms. Fleet whether Mr. Fleet was supposed to have the child, and she indicated that he was not, because she had custody of the child at that time. Ms. Fleet had a copy of the custody order on her phone and showed it to the police. A police officer went into the building ’and returned with the child within less than three minutes. Ms. Fleet was nervous and distressed, and the child was crying. Ms. Fleet left with the child and did not take the car.
Ms. Fleet also introduced evidence of an incident in February 2014 during a doctor’s appointment for the child. According to Ms. Fleet, she and Mr. Fleet had an argument in the waiting room about the child’s visitation schedule. During the argument, Mr. Fleet cursed at Ms. Fleet arid physically blocked Ms. Fleet and the,child from leaving the room. After Ms. Fleet screamed for help, a nurse asked Mr. Fleet to leave, but he became belligerent and refused tq leave. The police were called, but by the time they arrived the situation had calmed down. The incident scared Ms. Fleet and left her upset and intimidated. She concluded that Mr. Fleet hated her and was angry at her.'
With respect to the incident on March 10, 2014, Mr. Fleet testified that he saw through the window of his office that Ms. Fleet was trying- to take the car he had *986 been driving.- Mr. Fleet understood the trial court to have previously ordered that he and Ms. Fleet should keep possession of the cars they had been driving. He therefore ran outside, locked himself in the car, and called the police. Ms. Fleet was standing outside the car cursing at Mr. Fleet. Even after the police arrived, Ms-. Fleet was agitated and out of control. Mr. Fleet therefore took the .child from the; car into his office. Police officers came into the office and told Mr. Fleet that he could not keep the child. Mr. Fleet immediately surrendered the child. Although he knew that he did not have custody of the child at the moment he took the child, he took the child because the child was in, an unsafe environment, with Ms. Fleet “acting crazy and spewing expletives.”
With respect to the incident at the doctor’s office, Mr. Fleet testified that it was Ms. Fleet who began yelling and that he never tried to block the door.
The trial court granted a CPO to Ms. Fleet. The trial court found that there was good cause to believe that Mr. Fleet committed parental kidnapping during the incident on March 10, 2014. See D.C.Code § 16-1005(c) (2015 Supp.) (trial court may issue CPO on finding good cause to believe that respondent committed or threatened to commit criminal offense against petitioner). In pertinent part, the trial court concluded that Mr. Fleet took the child with the intent to prevent Ms. Fleet from exercising her right to custody of the child. See D.C.Code § 16-1022(b)(l) (2012 Repl.) (parent commits parental kidnapping if parent knowingly abducts, takes, or carries away child from lawful custodian, intending to prevent lawful custodian from exercising right to custody). Specifically, the trial court found that Mr. Fleet knew that he did not have a right to custody at the time he took the child; that Mr. Fleet’s act of taking the child from the car into his office constituted a taking or carrying away:within the meaning of the parental-kidnapping statute; and that Mr.- Fleet intended to prevent Ms.. Fleet fi’om exercising her rights'tp Custody''of the child. The trial court acknowledged Mr, Meet’s claim that he was acting to protect the child from harm, but concluded that there was no evidence,, that the child was in imminent danger of physical harm or was suffering any emotional harm. See D.C.Code " § 16-1023(a)(l), (20Í2 Repl.) (parent has defense to parental kidnapping if action was “taken to protect the child from imminent physical harm”).
The -trial court further found that issuing a CPO against Mr. Fleet would be consistent with the underlying purposes of the Intrafamily Offenses Act, D.C.Code § 16-1001 et seq. (2012 Repl.). Specifically, the trial court explained that the parties “have had a turbulent relationship that has often teetered • on the edge of violence.” The trial court described the parental-kidnapping offense as troubling, noting- that such ¡offenses can “escalate to a violent situation quickly as emotions 'easily would be- expected to run high-in matters involving children being taken away from a parent.” .The trial court further noted that Mr- Fleet,himself had recognized that the incident on March 10, 2014, created a “volatile situation,” leading Mr. Fleet to send one of his parents to pick up the child for 'the-next visitation. The trial court pointed out that, in their petitions in the present case, the Fleets had also accused each- other of committing assault, theft, and unlawful entry, arising from the- February 2014 incident at the doctor’s office; an incident earlier on March 10, 2014, at the marital residence; and the March 10, 2014, incident outside of Mr. Fleet’s office. Although the trial court did not find good cause to believe those alleged crimes had been committed, the trial court viewed those allegations as demonstrating a contentious relationship. Finally, the trial *987 court noted that there had been two other CPO -.cases in 2013, in which the parties accused each other of destruction of property, assault, and threats, including a 4eath threat. Acknowledging that the parties had voluntarily dismissed those CPO petitions, the trial court concluded that there was a pattern of allegations and discord that could eventually threaten the safety of the Fleets and their child..
The trial court denied Mr. Fleet’s petition for a CPO. In pertinent part, the trial court concluded that there was not good cause to believe that Ms..-Fleet had committed or threatened to commit theft of the car during the incident on March 10,-2014, because Ms. Fleet was the legal owner of that car.
II.
Mr. Fleet challenges the trial court’s issuance of the CPO against him on four principal grounds. We áre not persuaded by those challenges.
A.
Mr. Fleet argues that briefly taking the child into his office building did not amount to an abduction, taking, or carrying away of the child within the meaning of the parental-kidnapping statute. We conclude otherwise.
As a matter of ordinary language, Mr. Fleet indisputably took the child from the car, and from the physical custody of Ms. Fleet, and carried the child away and out of sight into the office building. Although Mr. Fleet argues that the taking and carrying away were minimal in duration and distance, we see no basis for interpolating minimum duration or distance requirements into § 16 — 1022(b)(1), which by its terms extends to any abduction, taking, or carrying away, without regard to duration or distance. We have held with respect to the general kidnapping statute that “there is no requirement that the victim be moved any particular distance or held for any particular length of time.” Richardson v. United States, 116 A.3d 434, 439 (D.C.2015). We reach, the same conclusion with respect to § 16-1022(b)(1). In contrast, another provision of the parental-kidnapping statute' does contain' an explicit durational requirement. D.C.Code § 16-1002(b)(3) (addressing situation where relative with .limited custody of.child retains custody for more than 48 hours after lawful custodian demands return).
Mr. Fleet also argues that he did not conceal the child, but rather simply took the child to his nearby office, where Ms. Fleet and the officers could readily locate him and the child. The trial court held to the contrary that Mr. Fleet' did conceal the child, in violation of D.C.Code § 16-1022(a). We need not and do not address that issue, because we conclude that the CPO is adequately supported by the trial court’s finding that there was good cause to believe that Mr. Fleet violated § 16-1022(b)(1) by taking and carrying away the child with the requisite intent. For cur-. rent purposes, we assume that Mr. Fleet did not conceal the child. That assumption, however, does not aid Mr. Fleet .under § 16-1022(b)(l), because that provision by its terms does not require proof of concealment. ' '
B.
Mr. Fleet argues that there was insufficient evidence that he intended to interfere with Ms. Fleet’s right to. exercise custody of the. child. , Ms- Fleet bore the burden of proof on this issue by a preponderance-of the evidence. J.O. v. O.E., 100 A.3d 478, 481 & n. 8 (D.C.2014). We review the trial court’s finding on the issue deferentially, “giving full play to the right of the judge, as trier of fact, to determine credibility, weigh the evidence, and draw *988 reasonable inferences.” In re K.M., 75 A.3d 224, 230 (D.C.2013) (internal quotation marks omitted); see also D.C.Code § 17-305(a) (2012 Repl.) (where trial judge acted as finder of fact, judgment “may not be set aside except for errors of law unless it appears that the judgment is plainly wrong or without evidence to support it”). We uphold the trial court’s finding.
Mr. Fleet admittedly knew that he did not have a right to custody of the child at the time he took the child. He contends, however, that his intent in taking the child was not to interfere with Ms. Fleet’s right to custody of the child but rather to protect the child from a dangerous situation. The trial court, however, was not required to credit Mr. Fleet’s testimony about his motives. See, e.g., Staton v. United States, 466 A.2d 1245, 1252 (D.C.1983) (“The trier need not believe the testimony of a witness even though,the witnesses] testimony is uncon-tradicted[ ], particularly where the witness has a personal interest in the result.”) (citations omitted). Moreover, the trial court found that there ’was no evidence that the child was in imminent danger of physical harm or was suffering any emotional harm. Those findings raise a question about the credibility of Mr. Fleet’s claimed motive.
In any event, the trial court appeared to assume that Mr. Fleet may have been motivated at least in part by a desire to protect the child, but held that Mr. Fleet also intended to' interfere with Ms. Fleet’s right to remain in physical control of the child. In support of that'conclusion, the trial'' court- noted that Mr.' Fleet took the' child farther away than would have been necessary if protection of the child were his only motive, instead removing the child from Ms:. Fleet’s view and making it impossible for Ms. Fleet to leave with-, the child had she chosen to do so. We also note that Mr. Fleet had readily inferable reasons to want to interfere • with Ms. Fleet’s right to physical custody of the child, including anger that Ms. Fleet was trying to take a car Mr. Fleet believed he was entitled to possess and a desire to prevent Ms. Fleet from leaving with the car. Finally, we note that the-trial court’s finding is supported by the general principle that a factfinder may infer that people intend the natural and probable consequences of their acts knowingly done. See, e.g., Corbin v. United States, 120 A.3d 588, 591 n. 3 (D.C.2015). For these reasons, we conclude that the record permitted the trial court to find by a preponderance of the evidence that Mr. Fleet intended to interfere with Ms. Fleet’s right to physical custody of the child.
C.
Mr. Fleet argues that the evidence was insufficient to overcome two related defenses: that he was protecting the child from imminent physical harm, D.C.Code § 16-1023(a)(l); and that his actions were justified under the common-law defense of necessity, see, ■ e.g., Morgan v. Foretich, 546 A.2d 407, 411 (D.C.1988) (“Criminal law recognizes the doctrine that an otherwise criminal act is excused if the harm that would have resulted from compliance with the law would have significantly exceeded’ the harm actually resulting from the defendants’ breach of the law. This defense of necessity does not require proof that harm, is actually occurring,' but only that the defendant have a reasonable belief that harm is imminent. It does not exonerate one who has the opportunity to resort to a reasonable légal alternative to violating the law.”) (internal citations and quotation marks omitted). We disagree.
At the time Mr. Fleet took the child from Ms. Fleet’s physical custody, there had been no violence or threats of violence. Although there had been a heated *989 verbal dispute, the police were on the scene. Under the circumstances, the trial court reasonably concluded that there was no • evidence that the child was in imminent danger of physical harm or was suffering any emotional harm. In the absence of such evidence, the trial court could permissibly reject Mr. Fleet’s defenses. It is true, as Mr. Fleet points out, that the trial court did not explicitly frame its holding in terms of what Mr. Fleet could reasonably have believed. But the trial court’s holding that there was no evidence of imminent danger of physical harm or of emotional harm implies that there was no basis upon which Mr. Fleet could have had a reasonable belief that he needed to- act to prevent such harm. Cf. generally, e.g., Jordan v. Jordan, 14 A.3d 1136, 1147-51 (D.C.2011) (upholding judgment based on trial court’s implicit findings).
D.
Mr. Fleet argues that the trial court abused its discretion, because granting a CPO against him did not advance the purposes of the Intrafamily Offenses Act. See generally Salyattera v. Ramirez, 111 A.3d 1032, 1037 (D.C.2015) (“[T]he trial court, in the exercise of its discretion, should only enter a CPO against a party for reasons consistent with the underlying purposes of the Intrafamily Offenses Act.”) (alterations and internal quotation marks omitted); Robinson v. Robinson, 886 A.2d 78, 86 (D.C.2005) (“[T]he broad, remedial purpose of the Intrafamily Offenses Act ... is[ ] to protect victims of family abuse frotó both acts and threats of violence.”); Maldonado v. Maldonado, 631 A.2d 40, 42 (D.C.1993) (“The Intrafamily Offenses Act is a remedial statute and as such should be liberally construed for the benefit of the class it is intended to protect.”). We find no abuse of discretion.
The trial court in this case carefully considered whether granting a CPO against Mr. Fleet would be consistent with the purposes- of the Intrafamily Offenses Act. In determining that a CPO was warranted, the trial court emphasized four points: (1) the parental kidnapping at issue in this case was troubling, because such kidnappings can quickly escalate into violence; (2) Mr. Fleet himself recognized that the incident on March 10, 2014, created a “volatile situation”; (3) the present CPO petitions were part of a series of allegations that demonstrated the contentious relationship between the parties; and (4) previous CPO petitions, although voluntarily withdrawn, included serious allegations of assault, threats, and destruction of property. Taken together, the trial court explained, these considerations supported a conclusion that the parties’ interactions could eventually threateh their safety and that of the child, and that a CPO ■ was warranted to “ensure peace and safety.” Robinson, 886 A.2d at 86;
We see no basis upon which to second-guess the trial court’s discretionary determination that a CPO against Mr. Fleet was warranted in the circumstances of this case. We are not persuaded by Mr. Fleet’s arguments to the contrary.
First, Mr. Fleet argues that the trial court could not properly grant a CPO against him without finding that Ms. Fleet or the child felt threatened or fearful. We disagree. We have never held or even suggested that proof of subjective fear by the, CPO petitioner or anyone else is a prerequisite to issuance of a CPO. Cf, e.g., Richardson v. Easterling, 878 A.2d 1212, 1217 (D.C.2005) (rejecting argument that CPO may not issue .unless abuse or violence has been alleged; “[W]e may not read into the Act limitations or restrictions which it does not contain.”). Moreover, there was evidence that Ms. -Fleet feared Mr. Fleet, and the trial court reasonably found that there was an objective basis for *990 concern that the discord between Mr. Fleet and Ms. Fleet could eventually threaten the safety of the parties and the child.
Second, Mr. Fleet emphasizes the trial court’s statement that Mr. Fleet had not compromised the child’s safety and Ms. Fleet’s statement that she did not think Mr. Fleet would harm the child. The CPO, however, is focused not solely on the child but also on Ms. Fleet. Moreover, the trial court ultimately concluded, based on a reasonable assessment of all of the evidence, that a CPO was justified to protect the safety of both Ms. Fleet and the child.
Third, Mr. Fleet argues that granting a CPO against him is unjustified because the March 10,- 2014, incident was precipitated by Ms. Fleet’s misconduct in trying to take the car from Mr. Fleet contrary to court order. We agree that, in light of the prior court order, Ms. Fleet should not have unilaterally tried to take possession of the car Mr. Fleet was driving. But the conclusion that Ms. Fleet precipitated the incident neither justifies Mr. Fleet’s response nor precludes the trial court from issuing a CPO based on the totality of the circumstances. Cf. Murphy v. Okeke, 951 A.2d 783, 790-91 (D.C.2008) (rejecting reasoning that CPO petitioner’s obsessive, immature, and irra-r tional conduct was responsible for CPO respondent’s assault on petitioner).
Finally, Mr. Fleet objects to- the trial court’s reliance on the allegations in the 2013 CPO petitions that were'voluntarily withdrawn. We have said, however, that a trial court considering whether to issue a CPO should “look at the entire mosaic of facts.” Salvattera, 111 A.3d at 1037 (internal quotation marks omitted). Moreover, the trial court appropriately treated the allegations as just that — allegations reflecting the contentious nature of the parties’ relationship — without assuming that the allegations were true. We perceive no error. Cfi, e.g., Murphy, 951 A.2d at 785 n. 2 (trial court may in some circumstances take judicial notice of records from other proceedings involving same parties and subject matter).
In sum, we uphold the trial court’s decision to grant a CPO against Mr. Fleet.
in.
Our differences with the dissent are primarily factual. From the dissent’s perspective, Mr. Fleet acted reasonably, or at least in good faith, to protect his daughter, rather than with the impermissible purpose of interfering with Ms. Fleet’s custody. The question for us on appeal, however, is not what perspective we would have adopted if- we had been the fact-finder. Rather, we must review the trial court’s ruling deferentially to determine whether the ruling is “plainly wrong or without evidence to support it.” D.C.Code § 17-305(a); see also, e.g., In re Ferguson, 54 A.3d 1150, 1152 (D.C.2012) (“In CPO violation cases, we must view the evidence in the light most favorable to sustaining the judgmént.”) (brackets and internal quotation marks omitted). Given the evidence relied upon by the trial court, we are unable to say that the trial court clearly erred by concluding that Mr. Fleet intended to interfere with Ms. Fleet’s custody when he took the child away from Ms. Fleet into his office and out of her view. We are equally unable to conclude that the trial court abused its discretion by deciding to issue a CPO.
We do not agree with the dissent’s statement that Ms. Fleet, was not “prevented from asserting” her right to custody over the child. To the contrary, Mr. Fleet took the child away from Ms. Fleet and out of her view, thereby preventing Ms. Fleet from exercising physical custody over the child. Moreover, even if we were otherwise inclined to recognize an exception to *991 the parental-kidnapping. statute for incidents that could be viewed as de minimis, that would not alter our conclusion in this case, because the trial court reasonably viewed Mr. Fleets, conduct in this case as “troubling” and' as posing risks of “esca-lat[ion] to a violent situation.” Finally, our affirmance of the trial court’s ruling in this case in no way implies that a CPO. could properly issue based, on the changing of a diaper or a slight movement of a child. On those facts alone, it. is difficult to imagine how a reasonable fact-finder could find either that the defendant intended to interfere with parental custody or that the child was “tak[en] or carried] away” within the meaning ■ of D.C.Code § 16-1022(b)(1).
IV.
Mr. Fleet also challenges the trial court’s decision not to grant a CEO against Ms. Fleet. We affirm that ruling..
We first address a threshold issue. In his notice of appeal, Mr. Fleet'provided the case number relating to Ms. Fleet’s petition for a CPO (CPO-785-14) but did not provide the case number relating to Mr. Fleet’s petition for a CPO (CPO-799-14). Ms. Fleet argues that Mr. Fleet’s appeal should therefore be dismissed to the extent that Mr. Fleet seeks review of the trial court’s denial of Mr. Fleet’s petition for a CPO. In the circumstances of this case, however, we conclude that dismissal is not warranted. The two cases at issue do not appear to have been formally consolidated, but they were consolidated for all practical purposes. They were called for trial on the same day, were tried in a single proceeding before a single judge, and resulted in a single judgment. Mr. Fleet’s notice of appeal accurately names the judge who decided both cases and provides the date of the decision of both cases. It refers to both parties, although it characterizes Ms. Fleet as the petitioner and Mr. Fleet as the respondent, which was- true of case No., CPO-785-14 but not case No. CPO-799-14. -
; This court does not appear to have decided whether a notice of appeal that provides the case number of only one of two cases in such circumstances is for that reason fatally defective as to the omitted case. The federal law we have found on the point, however, has concluded that such omissions are not fatal. See, e.g., United States v. Parks, 581 Fed.Appx. 575, 576 n. 1 (7th Cir.2014) (defendant’s failure to include on notice of appeal case number relating to kidnapping conviction did not preclude appellate review of that conviction, because defendant included case number of robbery conviction and robbery and kidnapping cases hád been consolidated and resulted in a single judgment) (citing cases). We reach the same conclusion in the present case, particularly given the absence of any claim of prejudice by Ms. Fleet. '
On the merits, we affirm the trial court’s decision not to grant a CPO against Ms. Fleet. Such a CPO may not issue unless the trial court finds by a preponderance of the evidence that the CPO respondent committed or threatened to commit a criminal offense. D.C.Code § 16-1005(c);. see J.O., 100 A.3d at 481 & n. 8. With respect to the incident in the parking lot on March 10, 2014, Mr. Fleet ultimately argued in the trial "court only that Ms. Fleet threatened to commit the offense of theft, by trying to take the car Mr. Fleet had been driving. The trial court concluded, however, that there was not good cause to believe that Ms. Fleet had threatened to commit theft, because Ms. Fleet was the legal owner of the car.- In this court, Mr. Fleet has abandoned 'the theory that Ms. Fleet had threatened to commit theft, instead arguing that Ms. Fleet had committed ■ unlawful entry, in violation of *992 D.C.Code § 22-2302 (2012 Repl.). In response, Ms: Fleet pointed out that Mr. Fleet had not relied on § 22-2302 in the .trial court. Ms. Fleet also argued that § 22-2302 is limited to. real property. In his reply brief, Mr. Fleet shifted again, relying on D.C.Code § 22-1341 (2012 Repl.) (prohibiting unlawful entry into motor vehicle).
“[I]t is fundamental that arguments-not raised in the trial court are not usually considered on appeal.” Jordan, 14 A.3d at 1153 (D.C.2011). We see no unusual circumstances warranting a departure from that general rule in this case, particularly given that it appears to-be an open question in this jurisdiction whether a person having legal title to. a motor vehicle can be found, guilty under § 22-1341. See, e.g., Jordan, 14 A.3d at 1153 (reviewing argument not properly raised in trial court only for plain error affecting substantial rights and resulting in miscarriage of justice or seriously affecting fairness and integrity of proceeding). We therefore affirm the trial court’s denial of Mr. Fleet’s petition for a CPO against Ms. Fleet.
The judgment of the trial court is therefore

Affirmed.