**UNITED STATES of America**

v.

**Mabel E. HARRISON, Appellant.**

**Nos. 71–1482, 71–1483.**

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 8, 1971.

Decided Feb. 1, 1972.

---

Mr. Noel H. Thompson, Arlington, Va. (appointed by this court) for appellant.

Mr. Leonard W. Belter, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty. at the time the brief was filed, John A. Terry and John G. Gill, Jr., Asst. U. S. Attys., were on the brief, for appellee.

Before FAHY, Senior Circuit Judge, and LEVENTHAL and ROBINSON, Circuit Judges.

LEVENTHAL, Circuit Judge:

Following a non-jury trial appellant was found guilty on each of two indictments, consolidated for trial, charging her with forging and uttering. The first indictment filed June 16, 1970, charged her with forging and uttering a savings withdrawal slip on the account of her aunt. The second indictment filed June 30, 1970, charged her with forging and uttering checks drawn on the account of her mother.

There is evidence to support the judgments.[1] There were two pre-trial psychiatric examinations and we see no warrant for our intervention on appeal because the court did not order a presentence psychiatric examination.

The question that has most concerned us is appellant's contention that consideration should have been given to referral of her case to the Family Division of the Superior Court. Appellant was brought to trial on March 10, 1971, one month after the organization of the Family Division of the Superior Court and of the Intrafamily Offense Branch of that Division, pursuant to § 131(a) of the District of Columbia Court Reform and Criminal Procedure Act of 1970.[2]

At the outset of appellant's trial, the prosecutor represented to the court that he had tried to have the case certified to the Family Division but had been advised that there was no jurisdiction in the Family Division because the offenses occurred in January and March of 1970, before the Act became effective. This assumption was erroneous. The provisions of the 1970 law regarding intra-family offenses must be liberally construed in furtherance of their remedial purpose.[3] The law now permits disposition of intra-family offenses, even though violations of the criminal law as, for example, wife-beating or other assaults, through civil suits praying a civil protection order. In the words of Judge Orman Ketcham, who as a judge of the District of Columbia Juvenile Court was influential in espousing provisions for civil treatment of intra-family offenses, such provisions give the court "a wider range of dispositional powers than criminal courts in order to effect rehabilitation rather than retribution."[4]

Speaking after enactment of the new District of Columbia law, Judge Ryan heralded its advent by emphasizing:

The paramount consideration concerning this legislation is that it is remedial. It is designed to provide a remedy where no remedy heretofore exist-

---

1. Appellant bases a claim of entitlement to acquittal on a theory of implied consent. The testimony of appellant's mother and aunt is quite clear that they had never authorized appellant to sign their names or withdraw money from their accounts, had continually warned her not to repeat past actions, but had taken no action because of her relationship and small son.

2. P.L. 91–358, enacted July 29, 1970. Section 131(a) is codified as D.C.Code § 16–1000 et seq.

3. Sutherland, Statutory Construction, § 5701 (1943).

4. O. Ketcham, The Juvenile Court for 1975, 40 Social Services Rev. 283–288 (Sept. 1966), also printed in Ketcham & Paulsen, Juvenile Courts (1967) 466–467.

ed. \* \* \* The people who come before this particular branch of the Family Division will be, if they are offenders, civil offenders. \* \* \*

We do not wish to stigmatize them. We want them to keep their earning capacity and also the possibility of self respect and their connection with the family.[5]

The new provisions establish a civil procedure. The Family Division proceeding would not lead to a judgment that punishes the individual for a past crime, but would at most subject him to a civil "protection order" which is in the nature of an injunction to restrain future actions, and to require participation in psychiatric treatment and counseling programs. D.C.Code § 16–1006.

The new provisions were modeled on the statutes of New York, which recognizes that the statutes are not to be applied restrictively—"not only because the usual cannons of construction would warrant a full and liberal effectiveness to the legislative purpose, but also because this innovation . . . has proved one of the most imaginative and progressive methods of avoiding the 'crime of punishment' and substituting prevention and treatment if appropriate in a non-criminal ambience—the Family Court." [6]

In our view Congress contemplated that the remedial statute have application to prior incidents. The Family Division's protection order may provide more prompt and effective relief to the members of the family and society than any projected criminal prosecution. It is theoretically possible that some persons would prefer a criminal prosecution to a Family Division proceeding because of the higher degree of proof required and the lesser likelihood of a court judgment.[7] However, the Family Division order does not compel fine or deten-

tion, or stand as a conviction of a past crime, and the considerations pertinent to ex post facto legislation are not pertinent. Similarly, the fact that a future contempt sanction may be had, for violation of the court's order after it has been issued, raises no questions of ex post facto effect.

■ The Government argues that the statute gives the prosecutor unfettered discretion whether to proceed with criminal charges. That is not sound. The statute provides that if, on a complaint or arrest for criminal conduct, it appears to the United States Attorney that the conduct involves an intra-family offense, "he shall notify the Director of Social Services" in the Superior Court. D.C.Code § 16–1002. While the prosecutor has latitude to file a criminal charge after this notification, if he proceeds in disregard of his statutory duty to notify the Director the court has jurisdiction to provide for dismissal of the criminal proceeding. Compare Watkins v. United States, 126 U.S.App.D.C. 21, 373 F.2d 681 (1966).

The United States Attorney has the duty to give an opportunity to the Director of Social Services to make a recommendation, and to give that recommendation his consideration. After consideration the United States Attorney may decide to proceed with a civil rather than a criminal proceeding—by referring the matter to the Corporation Counsel for the filing of a suit for a civil protection order. Even if a criminal charge is pressed by the United States Attorney, the Director's recommendations may have pertinence with respect to "conditions of release taking into account the intrafamily nature of the offense," see D.C.Code § 16–1002(b). The information would also be available to the court in regard to any other dispositional order, e. g., for a psychiatric examination or sentence.

---

5. See Proceedings D.C. Bar Association's Orientation on the Superior Court (Jan. 9, 1971) pp. 0124–10126.

6. In the matter of Ruth S. v. George S., 63 Misc.2d 1, 311 N.Y.S.2d 169, 178 (Family Court, 1970).

7. Id., 311 N.Y.S.2d at 181.

■ The Government stresses that defendant sought dismissal of the indictment, and that the indictment had been properly filed prior to the effective date of the provisions for referral to the Director of Social Services. A party's prayer for relief is not controlling. The court may grant such relief as is appropriate in the interest of justice.

In a case possibly appropriate for handling as an intrafamily offense, the court might have taken action by exercising its control over the docket to stay the criminal proceeding for a period of time, in order to discern whether referral to the Director of Social Services might produce a recommendation that would be acceptable to the prosecutor. The prosecutor's advice of a civil proceeding would require a nolle prosse, rather than the simple failure to present the matter to the grand jury, but that is a detail that does not loom large alongside the other issues of justice and policy.

■ The difficulty with appellant's position before us is that although the indictment filed June 30, 1970, charging her with forgery of her mother's name, might involve an "intrafamily offense" within the jurisdiction of the Family Division on the basis that she shared a mutual residence with her mother, the same cannot be said as to the indictment filed June 16, 1970, charging her with the forgery of the name of her aunt. The record before us establishes that appellant was not sharing a mutual residence with her aunt, and it is plain that the statutory definition of "intrafamily offense" cannot apply to offenses by niece against aunt unless they share a mutual residence.[8]

■ We realize that there is a possibility that if appellant had been handled by Family Division civil proceedings with respect to the forgery of the name of her mother, and the effectiveness of this remedy had been brought out, the United States Attorney might have nolle prossed the case involving the aunt. This is not beyond the ken of the possible, but we think it is too slender a basis —at least in the present state of the law —on which to predicate reversal of a conviction of an indictment charging an offense that is plainly not subject to Family Division jurisdiction. The question raised to the indictment filed June 30, 1970, relating to the forgery of the name of appellant's mother, is substantial. Since that question is difficult of resolution and the sentence is concurrent we think it appropriate to invoke the doctrine of *Hooper*[9] and vacate that conviction. The concurrent sentence on the indictment filed June 16, 1970, stands. The judgment is affirmed in part, and remanded in part.

So ordered.

8. The statute reads, see 16 D.C.Code § 1001(1):

The term "intrafamily offense" means an act, punishable as a criminal offense, committed—

(A) by one spouse against the other;

(B) by a parent, guardian, or other legal custodian against a child; or

(C) by one person against another person with whom he shares a mutual residence and is in a close relationship rendering the application of this chapter appropriate.

In People v. Williams, 24 N.Y.2d 274, 300 N.Y.S.2d 89, 248 N.E.2d 8 (1969), Judge Breitel held that the New York provision giving the Family Court exclusive jurisdiction over acts constituting an assault "between members of the same family or household" was inapplicable to an assault by the defendant on his uncle, arising from the uncle's attempt to evict defendant from a house owned by the uncle and occupied by defendant, his mother and grandparents, where the uncle did not reside in the same house. The court stressed the absence of "a common living arrangement between the uncle and nephew," and noted that the assault grew out of a tenancy relationship "rather than out of the intimate family relationship."

9. United States v. Hooper, 139 U.S.App. D.C. 171, 432 F.2d 604 (1970); United States v. Bobbitt, 146 U.S.App.D.C. 224, 450 F.2d 685 (Sept. 24, 1971).