**Ana CRUZ–FOSTER, Appellant,**

v.

**Michael FOSTER, Appellee.**

**No. 90–1217.**

District of Columbia Court of Appeals.

Argued Sept. 10, 1991.
Decided Oct. 17, 1991.

---

Laura A. Foggan, Christopher D. Cerf and Victoria F. Phillips were on the brief, for appellant.

Paul A. Signet, appointed by the court, was on the brief, for appellee.

Before SCHWELB and FARRELL, Associate Judges, and PRYOR, Senior Judge.

SCHWELB, Associate Judge:

Ana Virginia Cruz[1] appeals from a decision of the trial court declining to extend a civil protection order (CPO) against her ex-husband, Michael Foster. The original CPO was issued on August 22, 1987, pursu-

ant to the Intrafamily Offenses Act, D.C. Code § 16–1001 *et seq.* (1989). We vacate the decision below and remand for further proceedings.

I

It appears from Ms. Cruz' pleadings and affidavits at prior stages of the case that, beginning shortly after the parties' marriage in 1987, Foster threatened and abused Ms. Cruz, and sometimes her mother, with some severity and frequency. On July 29, 1987, Foster allegedly tied Ms. Cruz' hands, threatened to kill her and her mother, and refused to allow her to leave home. Ms. Cruz managed to call the police, who investigated her allegations and removed Foster from the premises. Ms. Cruz applied for a CPO and, on August 12, 1987, after having first temporarily restrained Foster *ex parte*, the court issued a final CPO in which he was ordered not to molest, assault, threaten or abuse Ms. Cruz and to stay away from her.

The record shows, however, that Foster continued to assault and. abuse Ms. Cruz after the initial order was issued. In August 1988, Foster was found guilty of criminal contempt of court for violations of the CPO. He was sentenced to imprisonment for a total of ten months. The judge also modified the CPO and extended it, as modified, for another year. In August 1989, the order was extended once more for still another year.

Foster was released from prison in December 1989. Ms. Cruz claimed that shortly after Foster's release, she saw him outside the hotel where she worked. She fled in fear. When she returned to work later, she came in a taxi, so that she could avoid contact with Foster. During January 1990, according to one of Ms. Cruz' co-workers, Foster also telephoned their place of work, identified himself as "Tony," and left a message for Ms. Cruz to the effect that "Michael is in town, and he's very angry, and she should be careful." The co-worker testified that, despite the caller's use of an assumed name, she recognized his voice as

1. Ms. Cruz is also known as Cruz–Foster.

that of Michael [Foster]. The co-worker added that in January 1990, Foster called again and asked if Ms. Cruz was working that night; the co-worker said she was not.

Ms. Cruz perceived these events as threatening, and moved for an extension of the CPO. At an evidentiary hearing on August 19, 1990, Ms. Cruz and the co-worker testified as described above. Foster, however, denied the allegations. He claimed that he had had no contact with Ms. Cruz since the 1988 contempt hearing, and that he had made no attempt to telephone her since then. Counsel for Foster also pointed out that his client had been indicted for allegedly assaulting Ms. Cruz with intent to kill her while armed (in connection with the incident which had led to his contempt adjudication), and that he had been ordered to stay away from her as a condition of release in that case.[2]

After hearing the evidence, the judge ruled in pertinent part that

the burden rests on the petitioner to convince the court over and above the [respondent's] testimony, and the court doesn't find that the testimony carries that weight. The testimony is in equal prominence as far as the court's crediting the witness is concerned, and that being the case, she has not borne the burden, and the request for extension of the civil protection order is denied.

This appeal followed.

## II

The Intrafamily Offenses Act, under which this proceeding was instituted, was designed to protect victims of family abuse from acts and threats of violence. It provides for the civil treatment of intrafamily offenses, and thus gives the court " 'a wider range of dispositional powers than criminal courts in order to effect rehabilitation rather than retribution.' " *United States v. Harrison,* 149 U.S.App.D.C. 123, 124, 461 F.2d 1209, 1210 (1972) (quoting Orman Ketcham, *The Juvenile Court for 1975,* 40 Soc.Serv.Rev. 283, 288 (1966)). "The paramount consideration concerning this legislation is that it is remedial," and the Act must be liberally construed in furtherance of its remedial purpose. *Id.* at 124–25, 461 F.2d at 1210–11 (citation and internal quotation marks omitted). Indeed, in 1982, the Council of the District of Columbia broadened the remedies available under the Act and criticized the prior judicial interpretation of the legislation as having been too narrow, so that "truly effective remedies [were] not ordered in some cases." D.C. Council, Committee on the Judiciary, Report on Bill 4–195, at 10 (May 12, 1982) (quoted in *Powell v. Powell,* 547 A.2d 973, 974 (D.C.1988)).

The Act does not authorize the issuance of permanent injunctions. Section 16–1005(d) provides, however, that

[a] protection order issued pursuant to this section shall be effective for such period up to one year as the Family Division may specify, but the Family Division may, upon motion of any party to the original proceeding, extend, rescind, or modify the order *for good cause shown.*

(Emphasis added).

The term "good cause" is not defined in the statute. Ms. Cruz contends that we should apply to the question whether a CPO should be extended the test which determines whether a permanent injunction should be dissolved, namely

whether there is any reasonable ground to believe that the illegal practices which led to the original entry of the injunction will be repeated if the injunction be dissolved.

*Pappas v. Local Joint Exec. Bd.,* 374 Pa. 34, 96 A.2d 915, 917 (1953); *see also United States v. Swift & Co.,* 286 U.S. 106, 119, 52 S.Ct. 460, 464, 76 L.Ed. 999 (1932) ("clear showing of grievous wrong evoked by new and unforeseen conditions" required before permanent injunction will be dissolved).

We do not agree with Ms. Cruz that these situations are parallel or that the authorities on which she relies are control-

---

**2.** Foster's criminal case, which raises questions of double jeopardy, is presently pending before this court en banc. *See Foster v. United States,* No. 89–449.

ling. A party moving to dissolve an existing injunction has the burden to demonstrate an unforeseen change of circumstances which would render it unjust to keep the court's order in effect. *Swift & Co., supra*, 286 U.S. at 119, 52 S.Ct. at 464; *De Filippis v. United States*, 567 F.2d 341, 343 n. 6 (7th Cir.1977). Here, however, Ms. Cruz is seeking relief that has not previously been awarded to her, namely, an extension of a prior CPO of limited duration. The burden is on the moving party to show the need for an injunction which has not been previously granted. *See United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 897–98, 97 L.Ed. 1303 (1953); *Lovell v. Brennan*, 728 F.2d 560, 563 (1st Cir.1984). As the Supreme Court stated in *Grant*,

> the moving party must satisfy the court that relief is needed. The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive. The chancellor's decision is based on all the circumstances; his discretion is necessarily broad and a strong showing of abuse must be made to reverse it. To be considered are the bona fides of the expressed intent to comply, the effectiveness of the discontinuance and, in some cases, the character of the past violations.

345 U.S. at 633, 73 S.Ct. at 897–98.

■ But although Ms. Cruz had the burden of showing good cause by a preponderance of the evidence,[3] the past history of the case is critical to the determination whether she did so. As stated in *In re S.K.*, 564 A.2d 1382, 1389 (D.C.1989) (per curiam) (concurring and dissenting opinion),[4] a case involving the somewhat analogous statute providing remedies for child abuse and neglect,

> [s]ince a civil proceeding is designed to protect the child rather than to punish the offender, it is essential that the court avoid an unduly narrow focus. One cannot determine whether a child's welfare requires the intervention of the state, with all of the disruption which such intervention often entails, by simply examining the most recent episode. Rather, the judge must be apprised of the entire mosaic.

*Cf. Clark v. United States*, 593 A.2d 186, 195–96 (D.C.1991). We agree with the Supreme Court of New Jersey that a defendant's past conduct is important evidence—perhaps the most important—in predicting his probable future conduct. *State v. Krol*, 68 N.J. 236, 344 A.2d 289, 302 n. 12 (1975). This is especially true in the context of a marital or similar relationship. *See Clark, supra*, 593 A.2d at 196.

Moreover, and especially in light of the remedial character of the Intrafamily Offenses Act, it is necessary to consider whether the "balance of harms" favors the grant of Ms. Cruz' application. Subject to considerations discussed below, *see* 931–932, *infra*, the potential for injury to Ms. Cruz if the CPO is not extended is substantial. A CPO is designed to protect her from acts and threats of violence. If the court's refusal to extend the order results in loosening the inhibitions against the resumption by Foster of his prior assaultive conduct, Ms. Cruz may be seriously harmed.

The potential harm to Foster if a CPO is issued, on the other hand, is considerably less. Foster has no right to abuse Ms. Cruz in any event. A CPO would do no more than require him to obey the law and, in this case, to stay away from Ms. Cruz,

---

**3.** This is the normal standard in civil cases, and we see no reason to apply a different one here. Ms. Cruz contends that the trial judge imposed a standard of "probable cause" which she perceives as more rigorous than a preponderance standard. We have found nothing that the judge said, however, which would support this contention.

It is true that in this case, Ms. Cruz seeks extension of an existing prior order rather than entry of a brand new one. We do not believe that this affects her burden, but the court must consider the entire history of her relationship with Foster, as reflected in the record, in determining whether Ms. Cruz has presented evidence sufficient to warrant the relief sought.

**4.** The majority in *S.K.* expressly stated that it concurred with this part of the separate opinion. *Id.* at 1383.

which he was apparently ready to do in any event. If the CPO is extended and Foster acts lawfully and stays away, his liberty will not be affected.

In general an injunction is an extraordinary remedy, enforceable by contempt, and injunctive relief is to be granted sparingly. *Greater Iowa Corp. v. McLendon,* 378 F.2d 783, 799 (8th Cir.1967). It has been held in the context of remedial civil rights statutes, however, that "courts should not be loathe [sic] to issue injunctions of general applicability." *See Hodgson v. First Fed. Sav. & Loan Ass'n,* 455 F.2d 818, 826 (5th Cir.1972). As the court stated in *Hodgson,*

> '[t]he injunctive processes are a means of effecting general compliance with national policy as expressed by Congress, a public policy judges too must carry out— actuated by the spirit of the law and not begrudgingly as if it were a newly imposed fiat of a presidium.'

*Id.* at 826 (quoting *Mitchell v. Pidcock,* 299 F.2d 281, 287 (5th Cir.1962)). The Intrafamily Offenses Act is not, strictly speaking, a civil rights statute, but it was designed to counteract the abuse and exploitation of women and children. Given the Council's unambiguously stated preference for a generous construction of the remedial provisions of the Act, we think that the approach exemplified by *Hodgson* provides instructive guidance.

### III

■ We now apply the foregoing considerations to the present record. Although the trial judge agreed, on motion of Ms. Cruz, to take judicial notice of prior proceedings in the case, it appears from her oral ruling that she limited her consideration to an assessment of credibility with respect to the episodes as to which she heard testimony. She gave no consideration, at least explicitly, to the "entire mosaic." *S.K., supra,* 564 A.2d at 1389. Even so, she effectively found the evidence to be in equipoise. In so close a case, the judge

might well have reached a different result if she had attached greater weight to past events.

We do not suggest that the denial of Ms. Cruz' request for extension of the CPO was necessarily erroneous. By the time of the hearing, considerable time had elapsed since Foster's last act of violence against Ms. Cruz.[5] The months Foster had spent under lock and key could also operate as a deterrent. Moreover, Foster was already subject to an order requiring him to stay away from Ms. Cruz, and not to abuse her, as a condition of his release in the felony case.

Ms. Cruz makes a spirited argument that the remedies under the Intrafamily Offenses Act were intended to supplement, rather than to supplant, any criminal proceedings. *See* D.C. Code § 16–1002(c) (1989). She argues, correctly, that if a CPO were entered and Foster violated it, she would have standing to bring contempt proceedings, while she would have no control over a decision by the United States Attorney as to whether or not to seek sanctions for an alleged violation of a stay-away order in the criminal case. She also contends that the CPO was "substantially broader in scope" than the order in the criminal case directing Foster to stay away from Ms. Cruz and from her place of work. The existence of the order in the criminal case, however, subjected Foster to a number of sanctions, including revocation of his release as well as criminal contempt proceedings. *See* D.C. Code § 23–1329 (1989). The need for extension of the CPO was, at least, less imperative than it would have been if the stay-away order did not exist, for an alternative ready remedy for abusive conduct remained at hand.

In reaching her decision, however, the judge evidently excluded consideration of the criminal case from her calculus,[6] and it does not appear that this factor entered into her exercise of discretion. Although

---

5. According to Ms. Cruz, however, Foster made a threatening call to her from jail.

6. According to the judge, "the court cannot consider whether the threat of the criminal case is

sufficient." Her reference appears, however, to have been to the inhibitive effect of the prosecution itself, and not to the stay-away order.

that discretion is broad, we are uncertain from the judge's brief articulation of her reasons whether its exercise rested on correct legal principles, *see In re J.D.C.*, 594 A.2d 70, 75 (D.C.1991), for it is not apparent that the judge took into consideration the "entire mosaic." *S.K., supra,* 564 A.2d at 1389. Indeed, the judge focused solely on her assessment of witness credibility with respect to the 1989 and 1990 incidents, and did not explicitly factor in what occurred before. Accordingly, we vacate the decision denying Ms. Cruz relief and remand the case to the trial court for further proceedings consistent with this opinion, which should result in the entry of more comprehensive findings of fact and conclusions of law.[7] Since any CPO which may be entered will look to the future, the judge is of course authorized to conduct further proceedings to determine whether there have been any developments since she last heard the case which would affect Ms. Cruz' right to relief.

*Remanded.*[8]

---

7. In fairness to the experienced trial judge, we recognize that it is often difficult, in handling a crowded calendar, to opine at length on one case while litigants in two dozen more await their turn to cross swords with their adversaries. For the reasons stated, however, we think that greater elaboration is required here.

8. On August 22, 1990, the trial judge stayed her order denying extension of the CPO pending appeal, and extended the order until resolution of the appeal. The interim CPO of August 22, 1990 shall remain in effect until further order of the trial court.