26 A.3d 708 (2011)
Henok ARAYA, Appellant,
v.
Aida KELETA, Appellee.
Nos. 09-FM-1203, 09-FM-1204.
District of Columbia Court of Appeals.
Submitted September 24, 2010.
Decided May 12, 2011.
Amended August 18, 2011.
Nina Masonson, Washington, DC, was on the brief for appellant.
John Christopher Belcher, Oxon Hill, MD, was on the brief for appellee.
Before WASHINGTON, Chief Judge,[*] and NEBEKER and STEADMAN, Senior Judges.
STEADMAN, Senior Judge:
Dr. Henok Araya appeals from a Civil Protection Order ("CPO"), which required him, inter alia, to vacate his primary residence located at 1800 New Jersey Ave., N.W. ("New Jersey Property"). Dr. Araya contends this residence was his sole and separate property and therefore the trial court lacked the statutory authority to enter the order to vacate. We disagree.

*709 I.
This CPO proceeding arose out of a physical altercation between Dr. Araya and his wife, appellee Aida Keleta, with respect to which the trial court made the following findings of fact:
The Court credits the testimony from both parties and finds that on January 13, 2009, both [Dr.] Araya and Ms. Keleta were involved in an altercation outside the New Jersey Avenue Property regarding the proper medical treatment for [their child]. On this particular date, the Court finds that [Dr.] Araya violently assaulted Ms. Keleta by pulling and dragging her across the threshold of the door of the home. The Court also finds that Ms. Keleta assaulted [Dr.] Araya by biting him in his torso area, perhaps to refrain [Dr.] Araya from taking the minor children from the New Jersey Avenue property.
Accordingly, after a four-day hearing, the trial court granted cross CPOs in favor of both parties. These protective orders required, inter alia, that Dr. Araya vacate the New Jersey Property out of "concern for the safety of the parties." The New Jersey Property was titled solely in Dr. Araya's name, pursuant to an April 15, 2004 deed, which was executed four months before Dr. Araya and Ms. Keleta were married. Ms. Keleta has lived in the New Jersey Property since the marriage, where she cooked, cleaned and took care of the parties' offspring.

II.
The portion of the Intrafamily Offenses Act relevant to Dr. Araya's contention, D.C.Code § 16-1005(c)(4) (2001), reads as follows:
(c) If, after hearing, the judicial officer finds that there is good cause to believe the respondent has committed or threatened to commit a criminal offense against the petitioner, the judicial officer may issue a protection order that:
....
(4) Directs the respondent to refrain from entering, or to vacate, the dwelling unit of the petitioner when the dwelling is:
(A) Marital property of the parties;
(B) Jointly owned, leased, or rented and occupied by both parties; provided, that joint occupancy shall not be required if the respondent's actions caused the petitioner to relinquish occupancy;
(C) Owned, leased, or rented by the petitioner individually; or
(D) Jointly owned, leased, or rented by the petitioner and a person other than the respondent[.]
Id.
The term "marital property" is not defined in the Intrafamily Offenses Act. Nor is the term defined or even used in the statutory provisions dealing with the allocation of property in divorce proceedings, to which Dr. Araya looks for support.[1] D.C.Code § 16-916 (2001) provides that, upon entry of a final decree of divorce, the court shall "(a) assign to each party his or her sole and separate property acquired prior to the marriage, and his *710 or her sole and separate property acquired during the marriage by gift, bequest, devise, or descent ... and (b) distribute all other property accumulated during the marriage, regardless of whether title is held individually or by the parties in a form of joint tenancy or tenancy by the entireties, in a manner that is equitable, just and reasonable...." Dr. Araya construes the term "marital property" to mean property subject to equitable distribution in a divorce proceeding pursuant to § 16-916(b). By negative inference, this would exclude his dwelling as "sole and separate property acquired prior to the marriage" under § 16-910(a). See Sanders v. Sanders, 602 A.2d 663, 666 (D.C. 1992) ("a home purchased prior to a marriage remains the sole and separate property of the purchaser, regardless of contributions from the non-purchasing spouse during the course of the marriage.").[2]
Dr. Araya's proposed mechanical interpretation transferring divorce law provisions to the Intrafamily Offenses Act posits an "unduly narrow focus" of the latter Act, which we have instructed trial courts to avoid. See Cruz-Foster v. Foster, 597 A.2d 927, 930 (D.C.1991). The Intrafamily Offenses Act "must be liberally construed in furtherance of its remedial purpose." Id. at 930. Moreover, in Robinson v. Robinson, 886 A.2d 78, 86 (D.C. 2005), we held that the Intrafamily Offenses Act "clearly envisions allowing safety concerns to trump property rights[,]" which serve "as only one factor in the totality of the circumstances[.]"[3]
In 1982, the D.C. Council amended the Intrafamily Offenses Act to expressly authorize orders to vacate as a means to countermand an "extremely narrow" interpretation of the Act's remedial provisions. D.C. COUNCIL, COMMITTEE ON THE JUDICIARY, REPORT ON BILL 4-195, at 10 (May 12, 1982); see Powell v. Powell, 547 A.2d 973, 974 (D.C.1988). The Council modeled the Act's vacate provisions after a Missouri statute, MO.REV.STAT. § 455.030 (1980), which, inter alia, "permits an order restraining the respondent from entering the family dwelling unit ... in favor of a spouse who otherwise has no property interest in the home." State ex rel. Williams v. Marsh, 626 S.W.2d 223, 229 (Mo.1982) (en banc) (emphasis added). Given this background and the liberal construction that must be afforded to the Intrafamily Offenses Act, we conclude that the term "marital property," as it exists in § 16-1005(c)(4), encompasses the "family dwelling unit," regardless of technical ownership. This term is therefore independent of the parties' property rights under equitable distribution jurisprudence.[4]
*711 Here, the uncontested evidence reveals that the New Jersey Property served as a family dwelling where the parties cohabitated as a married couple. It was unquestionably "marital property" within the construction we think must be given to the term. Accordingly, the order appealed from is affirmed.[5]
NOTES
[*] For consideration of the motion to amend, Chief Judge Washington has replaced Judge Kramer, who was on the original panel but has retired.
[1] Indeed, a Boolean search does not reveal that the phrase appears anywhere else in the District of Columbia statutes and regulations, other than in a provision dealing with guardianships which provides no help here. D.C.Code § 21-2055(b)(2)(C) (2001). Our case law has occasionally made use of the phrase as a short-hand phrase for property subject to D.C.Code § 16-916(b). See, e.g., Hemily v. Hemily, 403 A.2d 1139, 1143 (D.C. 1979) (defining marital property as "property initially acquired in such a way as to be apportionable under subsection (b)" of § 16-910). We do not think such usage for convenience dictates its meaning in the Intrafamily Offenses Act.
[2] In Yeldell v. Yeldell, 551 A.2d 832, 834 (D.C. 1988), we recognized that a non-purchasing spouse's substantial contributions to sole and separate property could entitle him or her to an equitable interest in such property. Although we suggested that a non-working "wife would be entitled to some credit for her homemaking services[,]" id. at 836, we have not squarely decided whether such intangible contributions alone can create an equitable interest in real property. See Ealey v. Ealey, 596 A.2d 43, 48-49 (D.C.1991). Because we hold that the terms used in the Intrafamily Offenses Act are independent of those used in equitable distribution jurisprudence, we need not decide this issue.
[3] In Robinson, 886 A.2d at 79, the property at issue, neighboring the family home, was jointly owed by the parties and thus no question arose of trial court power under the Act.
[4] Any legal conclusions made in a CPO proceeding concerning a spouse's rights are not dispositive in a later divorce proceeding. As we noted in Robinson, 886 A.2d at 86, a trial court faces policy concerns when entertaining an order of protection different from those addressed in a divorce action.
[5] We find no merit in Dr. Araya's remaining claims that the trial court abused its discretion by failing to specify the safety concerns and refusing to relocate Ms. Keleta to an alternate home he owned on MacArthur Boulevard. Trial courts are granted broad discretion when implementing the remedial measures of the Intrafamily Offenses Act, and are instructed to consider the "entire mosaic" of facts when reaching their conclusions. See Cruz-Foster, 597 A.2d at 931-32. We will only set aside a trial court's exercise of discretion when presented with "a strong showing of abuse[.]" Id. at 930 (quoting United States v. W.T. Grant Co., 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953)). No such abuse has been shown here.