*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 19-FM-0854

ASLI CAROME, APPELLANT,

v.

PATRICK J. CAROME, APPELLEE.

Appeal from the Superior Court of the
District of Columbia
(CPO-4759-17)

(Hon. Maribeth Raffinan, Trial Judge)

(Argued November 17, 2020                    Decided October 28, 2021)

*Ayesha N. Khan* for appellant.

*Patrick J. Carome*, pro se.

*John A. Bourgeois* and *Steven M. Klepper* were on the brief for Network for Victim Recovery of DC et al., *amici curiae* in support of appellant.

Before BLACKBURNE-RIGSBY, *Chief Judge*, and GLICKMAN and MCLEESE, *Associate Judges*.

Opinion for the court by *Chief Judge* BLACKBURNE-RIGSBY.

Dissenting opinion by *Associate Judge* GLICKMAN at page 19.

BLACKBURNE-RIGSBY, *Chief Judge*: For a second time, Asli Carome appeals the denial of her petition for a civil protection order (CPO) against her then-husband Patrick Carome. Ms. Carome claimed that on October 10, 2017, Mr. Carome assaulted her and destroyed her personal property, thereby committing criminal offenses against her that justified the issuance of a CPO under the Intrafamily Offenses Act ("the Act"). D.C. Code §§ 16-1001-1006 (2012 Repl., previously amended in 2013). After the trial court declined to issue a CPO, Ms. Carome appealed to this court, *Carome v. Carome*, No. 18-FM-368, Mem. Op. & J. (D.C. Apr. 4, 2019) (hereinafter *Carome I*), which then remanded the case back to the trial court. Specifically, this court "authorized [the trial court] to conduct further proceedings to determine whether there ha[d] been any new developments since the last hearing that would [have] affect[ed] Ms. Carome's petition." The trial court then declined to take additional evidence and again denied Ms. Carome's request for a CPO. Ms. Carome filed a timely appeal. Prior to oral arguments in the instant case, this court decided *Ramirez v. Salvattera*, which clarified the "good cause" standard used when considering the extension of a CPO. 232 A.3d 169 (D.C. 2020). Although the facts in *Ramirez* differ significantly in some respects, we believe that *Ramirez* requires evidence of prior relevant acts to be considered by the trial court in making the threshold determination of whether there is good cause to believe that an intrafamily offense occurred. We hold that *Ramirez* applies in instances of initial

CPO issuances, and we therefore remand this case to the trial court for further proceedings consistent with the principles outlined in *Ramirez* and explained below.

## I.     Factual & Procedural Background

Ms. Carome's petition for a CPO followed an incident that occurred at the Caromes' residence on the morning of October 10, 2017.  According to Ms. Carome's testimony, on that morning she entered Mr. Carome's bathroom to obtain his explanation for where he had been the previous evening.  He refused to answer and ordered her to get out.  Ms. Carome claimed that as she turned to leave, she accidentally knocked one of her husband's toiletry items off a countertop.  She testified that Mr. Carome then pushed her in the back as she exited his bathroom.  He allegedly followed her into her bathroom and pushed her a second time, causing her to hit her head against the wall.  Next, Mr. Carome threw her toiletries and other items off her bathroom counter to the floor, causing her porcelain toothbrush holder to shatter on impact.

Mr. Carome testified to a different version of events.  After Ms. Carome entered his bathroom, he testified, she intentionally swept an entire tray of his toiletries to the floor.  To corroborate this claim, Mr. Carome introduced in evidence

photographs taken by the police that morning showing his toiletries and toiletry tray strewn on his bathroom floor. In retaliation, he immediately walked into his wife's bathroom ahead of her and swept her toiletry items off her sink, shattering her toothbrush holder. Mr. Carome denied pushing or otherwise assaulting Ms. Carome at any time; rather, he testified, she pushed him while they were in her bathroom, causing him to injure his back against the windowsill. Ms. Carome denied pushing Mr. Carome in her bathroom.

Ms. Carome called the police and reported what happened to the two officers who responded. Mr. Carome denied pushing Ms. Carome and showed the officers the toiletries she allegedly knocked on his bathroom floor and the injury she allegedly caused to his back. The police took Mr. Carome to the hospital for assessment and treatment of the injury. The police placed both Ms. Carome and Mr. Carome under arrest, although neither of them was charged. Two days later, on October 12, 2017, Ms. Carome filed a petition for a CPO against Mr. Carome and obtained a temporary protective order (TPO).

At the hearing on her CPO petition, Ms. Carome described three prior incidents in which her husband allegedly destroyed her property or assaulted her. On one night in 2013, Mr. Carome entered her home office, while she was nearby,

and threw her binders, papers, and other personal items over the balcony onto the front lawn. Ms. Carome testified that her books and papers were torn after being thrown on the front lawn, and her son, who observed the incident, also testified that her personal papers, books, and other items were damaged by the fall.

In November 2016, Ms. Carome testified, her husband destroyed her bonsai plants by putting them down the kitchen garbage disposal while she was upstairs ("the bonsai incident"). And the following month, when she was standing in the hallway and blocking his path, Mr. Carome put his two hands on her shoulders to push her to the side in order to "clear[] the way . . . for him to continue walking down the hallway."

Mr. Carome denied the latter "pushing" incident but admitted that he threw a single item of his wife's property, either a paperweight or a book, off the balcony on one occasion and destroyed her bonsai plants on another. He acknowledged that this "was a way of expressing real anger and frustration at [Ms. Carome]."

After hearing all the testimony and reviewing all the exhibits, the trial court orally denied Ms. Carome's petition for a CPO. Noting that her accounts of the October 10, 2017, incident were inconsistent as they related to "when she was

pushed, the number of times she was pushed and the sequence of events that took place," the judge found her testimony about an assault and the destruction of her property to be "unreliable and untrustworthy as to what happened and how things happened that early morning." Moreover, the judge found Ms. Carome's explanations for her different stories to be unpersuasive. Stating that there was "nothing to corroborate Ms. Carome's testimony" regarding the alleged offenses on October 10, the judge concluded that Ms. Carome "has not shown that there is good cause to believe . . . an intrafamily offense was committed" and denied her request for a CPO.

After a timely appeal, this court issued *Carome I*, which vacated the trial court's decision and remanded for further proceedings. We found that the trial court erred when it failed to address Ms. Carome's claim of destruction of property, given that Mr. Carome admitted to breaking Ms. Carome's porcelain toothbrush holder. We also found that the trial court failed to consider whether a CPO was appropriate based on the destruction of property claim. We therefore "vacate[d] the decision denying Ms. Carome relief and remand[ed] for the trial court to make additional findings of fact and conclusions of law regarding the alleged malicious destruction of property offense and prior similar conduct by Mr. Carome." *Carome I*, at 7. In doing so, we "authorized [the trial court] to conduct further proceedings to determine

whether there ha[d] been any new developments since the last hearing that would affect Ms. Carome's petition." *Id.*

The trial court held a status hearing in this matter on August 8, 2019, to hear arguments from the parties regarding whether there was any need for further evidentiary proceedings. At the status hearing, Ms. Carome's counsel pointed to Mr. Carome's pattern of prior behavior, specifically mentioning the bonsai incident and the incident in which Mr. Carome threw Ms. Carome's belongings off a balcony. Ms. Carome's counsel also asked the court to take additional evidence because that same "pattern of conduct" had continued after October 10, 2017. But when he tried to describe the various post-October 10 incidents, the court instructed counsel only to list the "categories of events" "without necessarily giving me all the specifics."

On August 19, 2019, the trial court issued a written order declining to take additional evidence and again denying Ms. Carome's request for a CPO. The court credited Mr. Carome's testimony that he did not push Ms. Carome on October 10, 2017, and that he had never pushed Ms. Carome in the past, including in December 2016. The trial court acknowledged that malicious destruction of property may form the basis for a CPO, but held that Ms. Carome had not demonstrated that Mr. Carome committed that crime on October 10, 2017, because she had not shown that Mr.

Carome acted without mitigation, that is, without "adequate provocation" of the kind that "would cause an ordinary, reasonable person to lose his or her self-control." (citing 1 Criminal Jury Instructions for DC Instruction 5.400 (2020)).

On appeal, Ms. Carome notes that the trial court's one-sentence treatment of the December 2016 incident was presented without any rationale and implicitly discounted the testimony of Ms. Carome's son, who allegedly witnessed the event. As such, Ms. Carome argues that the trial court erred by failing to "consider all relevant factors and not rely on any improper factors." *J.O. v. O.E.*, 100 A.3d 478, 481 (D.C. 2014).

The trial court made no mention of the earlier incidents of property destruction, including the November 2016 bonsai incident that Mr. Carome admitted to and that had taken place just one month before the December 2016 incident that the trial court addressed, or the 2013 incident in which, as Mr. Carome conceded, he threw at least one of Ms. Carome's personal items off a balcony. The trial court also concluded that there was no reason to take additional evidence regarding events that took place after October 10, 2017, because any new developments between the Caromes would not impact the court's determination that Mr. Carome did not

commit any of the criminal offenses alleged in Ms. Carome's petition. This appeal followed.

## II.

On appeal, Ms. Carome argues that the trial court erred by failing to consider all events that predated and postdated October 10, 2017. Specifically, Ms. Carome puts forth the arguments that (1) these incidents can help contextualize the October 10 event as part of a pattern of abuse; and (2) that these incidents should be considered on their own as qualifying intrafamily offenses sufficient to grant a CPO.

The Act, D.C. Code §§ 16-1001-06, was passed by Congress in 1970 in order to create a civil mechanism for addressing violence within families — an "imaginative and progressive" system that was designed to promote "prevention and treatment" over punishment. *United States v. Harrison*, 461 F.2d 1209, 1210-11 & n.2 (D.C. Cir. 1972) (citations omitted). In giving the courts of the District of Columbia "a wider range of dispositional powers than criminal courts," including the power to issue CPOs that enjoin future actions and provide for counseling and mental health treatment, *id.*, the Act was designed both to "protect victims of family abuse from acts and threats of violence," *Cruz-Foster v. Foster*, 597 A.2d 927, 929

(D.C. 1991), and to "effect rehabilitation rather than retribution" or "punish[ment]" of civil offenders. *Harrison*, 461 F.2d at 1210-11. As such, we have held that the Act should be liberally construed in furtherance of its remedial purposes. *Id.* at 1210; *Cruz-Foster*, 597 A.2d at 929.

The Act seeks to prevent and remediate particular criminal offenses: intrafamily, interpersonal, and intimate partner violence, as well as stalking, sexual assault, and sexual abuse. D.C. Code §§ 16-1001(6)-(9), (12), -1005(c). To this end, it provides that a trial court "may issue" a CPO that is effective for "up to one year," if it "finds that there is good cause to believe the respondent has committed or threatened to commit a criminal offense against the petitioner . . ." *id.* § 16-1005(c), (d). The CPO may include a range of remedial provisions, including protective and rehabilitative measures, both mandatory and prohibitory, applicable to the petitioner and the respondent, as appropriate. § 16-1005(c)(1)-(12). Consistent with the standards generally applicable to civil cases, a finding of good cause to issue a CPO must be supported by a preponderance of the evidence, and it is the petitioner's burden to put forth this evidence. *See J.O.*, 100 A.3d at 481; *Cruz-Foster*, 597 A.2d at 930-31. The issuance of a CPO is within the broad discretion of the trial court, and this court will reverse the trial court's decision only where the trial court has abused its discretion. *Maldonado v. Maldonado*, 631 A.2d 40, 42 (D.C. 1993); *see*

*Robinson v. Robinson*, 886 A.2d 78, 86 (D.C. 2005); *Cruz-Foster*, 597 A.2d at 931-32. A trial court abuses its discretion when it rests its conclusions on incorrect legal standards. *In re J.D.C.*, 594 A.2d 70, 75 (D.C. 1991).

In July 2020, after the parties in this case filed their briefs, we issued an opinion in *Ramirez v. Salvaterra*, 232 A.3d 169 (D.C. 2020), which clarified and elaborated upon the legal standard, as articulated in our precedent, for finding "good cause" with respect to extending a CPO. *Id.* at 179. There, an alleged victim of sexual abuse sought a third extension of a CPO against the alleged perpetrator, who had lived in the same apartment building. *Id.* at 174. Although the trial court granted the first two extensions, it concluded there was no good cause to extend the CPO for a third year, instead extending it for only three months to give the victim time to make any necessary arrangements.[1] *Id.* at 173.

---

[1] The court found that there was no cognizable danger of a recurrent violation because the parties had no history of violence or harassment before the initial incident that occurred four and half years prior. *Id.* at 178. Furthermore, the court found that "no incidents occurred" while the parties were living in the same building, Mr. Salvattera had not targeted or harassed Ms. Ramirez in any way since the first extension, and [Mr. Salvattera] had not contacted Ms. Ramirez since. *Id.* Although the trial judge credited Ms. Ramirez's testimony that she was "terrified" of Mr. Salvattera, she stated that "this does not provide evidence that [Mr. Salvattera] has committed or is likely to commit additional abuse against her; it only indicates that [Ms. Ramirez] continues to be affected by past abuse." *Id.*

In *Ramirez*, we held that an extension of a CPO for "good cause" means good cause to believe that there is a cognizable danger of a recurrent violation. *Id.* at 183. We then instructed the trial court to take into account the entire mosaic of evidence related to the case, which we reiterated encompasses the full history of the parties' relationship and interactions, both before and after the original CPO was issued. *Id.* at 185. From the Act and case law we distilled the following principles pertaining to the "good cause" standard:

> In other words, the court should examine evidence of what occurred before the original CPO was issued, the nature of the criminal offense that served as the basis for the CPO, and what has occurred since the original CPO was issued and any subsequent extensions were granted, as the case may be.
>
> …
>
> In sum, in considering a motion to extend a CPO, if the trial court determines, based on the entire mosaic and consistent with considerations discussed above, that the petitioner has demonstrated by a preponderance of the evidence that there is a cognizable danger that, in the absence of an extension of the CPO, the respondent will commit or threaten to commit a criminal offense against the petitioner in the coming year, good cause exists and it "may" extend the CPO. D.C. Code § 16-1005(d). If the trial court does not so determine, good cause does not exist and it may not extend the CPO.

*Id.* at 184, 187.[2]

Here, we are confronted with the granting of a CPO in the first instance. We must therefore determine if *Ramirez*'s requirement — that mosaic evidence be considered in the threshold determination of whether there is a cognizable danger of a recurrent criminal offense — applies to consideration of an initial petition for a CPO. "We have held that the same procedural features apply to extensions of CPOs that apply to the initial issuance of CPOs," *id.* at 180, and that courts "may not read into the Act limitations or restrictions which it does not contain." *Richardson v. Easterling*, 878 A.2d 1212, 1217 (D.C. 2005); *see Pepper v. United States*, 562 U.S. 476, 490-91 (2011) (declining to read federal statute to insert temporal limitations on evidence that is relevant to trial court's decision on remand following vacatur).

Consistent with the Act's broad remedial purposes, when a trial court revisits a CPO petition on remand based on an error in the original ruling, the trial court's renewed inquiry is not limited to whether its initial decision was correct based on the original record. Rather, as we have stated in a variety of procedural

---

[2] On April 27, 2021, The District of Columbia passed the Intrafamily Offenses and Anti-Stalking Orders Amendment Act of 2020, D.C. Act 23-275, 68 D.C. Reg. 1086 (Apr. 27, 2021), which amends certain provisions contained in the Act. For the purposes of this opinion, we refer to the Act and its provisions as they were at the time of the trial court's ruling. In addition, the parties have not requested we apply the amended provisions to this appeal.

circumstances, the trial court may supplement the original record by considering evidence of any relevant developments that occurred in the time between the trial court's initial ruling on the CPO petition and this court's remand decision. *See J.O.*, 100 A.3d at 483 (authorizing trial court on remand to "reopen the hearing to take additional evidence" on petition for CPO); *Richardson*, 878 A.2d at 1218 n.9 (reinstating dismissed CPO petition and instructing trial court to consider whether changed circumstances "affect the appropriate disposition of the case on remand"); *Robinson v. Robinson*, 886 A.2d at 87 (ordering remand following denial of petition to amend CPO so that the trial court could "re-evaluate the situation of the parties, considering the entire mosaic of facts before it (including any developments since the entry of the last order)"); *cf. Cruz-Foster*, 597 A.2d at 932 ("Since any CPO which may be entered will look to the future, the judge is of course authorized to conduct further proceedings to determine whether there have been any developments since she last heard the case which would affect [petitioner's] right to relief."). Thus, even where a court considers an initial petition for a CPO, the probative nature of mosaic evidence is well established.

Considering *Ramirez* in this context, reading the Act in a way that would allow trial courts to ignore probative evidence regarding an alleged offense would be counter to the goals of the Act. As we recognized in *Carome I*, there is support for

the proposition that "where an act of destruction of property potentially serves as a precursor to, threat or instigator of, or substitution for violence, or otherwise comprises part of a violent or intimidating pattern of domination and control, the issuance of a CPO would properly serve the [Act's] broad goals." *Carome I*, at 6 (quoting *Small v. Cannady*, No. 2013 CPO 2174, 2014 D.C. Super. LEXIS 4, at \*15 (D.C. Super. Ct. Mar. 26, 2014)). Where a respondent admits to destroying the petitioner's property, but raises sufficient evidence of mitigating circumstances, a trial court defies the Act's text and purpose if it imposes artificial temporal restrictions on evidence that may rebut that defense, such as evidence indicating that the singular act was a part of an abusive pattern of intimidation or control.[3] Simply put, the Act's purpose is to provide protection if protection is needed. It would not make sense for the trial court to base its decision on a portion of the record from some earlier point instead of on all current and available information that may bear on the decision to grant a CPO while the trial court is making that determination on remand.

---

[3] *See* Deborah Epstein & Lisa A. Goodman, *Discounting Women: Doubting Domestic Violence Survivors' Credibility and Dismissing their Experiences*, 167 U. PENN. L. REV. 399, 417–18 (2019) ("Psychologists explain that in many abusive relationships victims are subjected to their partners' coercive control through a wide variety of psychological tactics, including, for example, "fear and intimidation[,] . . . emotional abuse, destruction of property . . .").

Accordingly, the trial court must consider the entire mosaic of evidence when determining the threshold question of whether the petitioner has proven the allegation that the respondent committed or threatened to commit an intrafamily offense. This means that the court should consider probative evidence of events predating the events that precipitated a CPO petition, and, when possible, the events of the intervening months or years that may shed new light on the issue of provocation. This scope best fulfills the "imaginative and progressive" purposes of the Act. *Ramirez*, 232 A.3d at 179.

## III.

Having clarified the applicability of mosaic evidence to the initial issuance of a CPO, we now vacate and remand so that the trial court may reconsider Ms. Carome's petition in light of this judgment and in light of the mosaic evidence proffered. In its most recent order, the trial court found that Ms. Carome had not demonstrated that Mr. Carome acted without provocation. *See Brown*, 584 A.2d at 533-34 ("[P]rovocation is a proper defense to the charge of malicious destruction of property."). The trial court, on remand in *Carome I*, declined to hear any new evidence that may have been probative of the malicious destruction of property and provocation issues.

We do not second guess the credibility findings that led the trial court to its conclusion. *Karim v. Gunn*, 999 A.2d 888, 890 (D.C. 2010). However, as far as we can tell, the court relied solely on such findings.[4] As discussed above, the court should consider the entire mosaic of the evidence when determining the threshold question of whether an intrafamily offense has occurred. Here, that includes any probative evidence of prior events that could help prove the lack of provocation. *Brown v. United States,* 584 A.2d 537, 539-43 (D.C. 1990). Evidence of similar acts without such provocation may sufficiently rebut such a claim that the respondent truly "act[ed] on impulse" or that the petitioner actually caused respondent to act. *See id.*, 584 A.2d at 542 n.17 ("What is sufficient provocation . . . must vary with the myriad shifting circumstances of men's temper and quarrels. It is . . . therefore to be considered in view of all circumstances."); *cf. Harrison v. United States*, 30 A.3d 169, 176-77 (D.C. 2011) ("Evidence of prior bad acts may be admissible, though, if offered for a "substantial, legitimate purpose," including "to establish that the defendant had a motive to commit the charged offense."). Here, relevant acts

---

[4] The trial court did not mention the prior incidents, and as we have held, a trial court abuses its discretion when it neglects to address "relevant factors" and provide "substantial reasoning." *Carome I*, at 4 (citing *Cruz-Foster*, 597 A.2d at 930, and *J.O.*, 100 A.3d at 481).

may include, but are not limited to, the bonsai incident and the balcony-throwing incident.[5]

For the foregoing reasons, we vacate the trial court's decision denying Ms. Carome relief and remand for the trial court to make additional findings of fact and conclusions of law, in accordance with *Ramirez* and with this opinion, regarding the entire mosaic of evidence pertaining to the alleged malicious destruction of property offense.[6]

---

[5] We respectfully disagree with the dissent with respect to both the bonsai and balcony-throwing incident. These past incidents are relevant in assessing the entire mosaic related to the malicious destruction of property allegation, because "an act of destruction of property potentially serves as a precursor to, threat or instigator of, or substitution for violence, or otherwise comprises part of a violent or intimidating pattern of domination and control." *Small v. Cannady*, No. 2013 CPO 2174, et al., 2014 D.C. Super. LEXIS 4, at *15 (D.C. Super. Ct. Mar. 26, 2014) (cited by *Carome I*, at 6). In *Carome I*, we determined that these two incidents had "scant bearing" on whether Mr. Carome committed an intrafamily offense on October 10, 2017. However, the trial judge had not yet considered if these past acts were probative in assessing the alleged destruction of property as a basis for issuing a CPO. Our decision in *Carome I* left open "for the trial court to make additional findings of fact and conclusions of law *regarding the alleged malicious destruction of property offense and prior similar conduct* by Mr. Carome." *Carome I*, at 7 (emphasis added).

[6] Ms. Carome alleges that Judge Raffinan's relationship with Mr. Carome's counsel raised a potential appearance of bias and argues that, on remand, the case should be reassigned to a new judge. In support of her argument, Ms. Carome provides evidence of independent research not in the factual record on appeal. Accordingly, we decline to offer any decision regarding reassignment on remand, but we leave the issue open to be raised on remand.

*So ordered.*


GLICKMAN, *Associate Judge*, dissenting: I regret I am unable to join the majority opinion, for I agree with much of it. I wholeheartedly agree, for example, that the Intrafamily Offenses Act should be construed liberally to effectuate its remedial purposes; that a trial court should consider the "entire mosaic" of the parties' relationship in deciding whether there is good cause to grant or extend a civil protection order; and that criminal destruction of property to perpetuate an abusive relationship is an offense that can justify the issuance of a CPO. For two reasons, however, I am compelled to dissent.

First, I fear that, in discussing *Ramirez v. Salvattera*,[1] the majority conveys an erroneous view of the current state of the law. The majority states that *Ramirez* "clarified" the "legal standard" with its holding that a court cannot find "good cause"

---

[1] 232 A.3d 169 (D.C. 2020), *superseded by statute*, the Intrafamily Offenses and Anti-Stalking Orders Amendment Act of 2020 (hereafter, the "Amendment Act"), D.C. Act 23-275, 68 D.C. Reg. 1086 (Apr. 27, 2021).

to extend a CPO unless it finds "good cause to believe that there is a cognizable danger of a recurrent violation," i.e., the threat of another criminal offense against the petitioner. *Ante* at 11–12 (citing *Ramirez*, 232 A.3d at 183). The majority opinion implies this is still the law.

What the opinion fails to mention is that the Amendment Act overturned *Ramirez*'s holding by adding subsection (d-1) to D.C. Code § 16-1005 (2021 Supp.).[2] That subsection explicitly provides that "[o]ther compelling circumstances

---

[2] In its entirety, new subsection (d-1) reads as follows:

> (1) A judicial officer may, upon motion of any party to the original proceeding, extend, modify, or vacate an order for good cause shown.

> (2) Except as provided in paragraph (3) of this subsection, a finding that an order has been violated is not necessary for a finding of good cause to modify or extend an order.

> (3) For each request for an extension, the judicial officer may extend an order for the period of time the judicial officer deems appropriate, but before granting any single extension longer than 2 years, the judicial officer shall find:

>> (A) That the respondent has violated the civil protection order;

>> (B) That prior to obtaining the order being extended, the petitioner had previously obtained a civil protection order or foreign protection order as that term is defined in subchapter IV of this chapter against the same respondent; or

related to the petitioner's safety or welfare" also may constitute "good cause" to extend a CPO.[3] The subsection further specifies that "a finding that an order has been violated is not necessary for a finding of good cause to modify or extend an order."[4] These provisions effect a significant broadening of the narrow definition of "good cause" adopted by *Ramirez*. There is no requirement in the amended statute that a petitioner show a danger of a recurrent criminal violation to obtain an extension of a CPO. The absence of such a requirement is telling, since the Council was well aware of *Ramirez*'s holding when it amended the statute and consciously chose not to incorporate it.[5]

---

(C) Other compelling circumstances related to the petitioner's safety or welfare.

D.C. Code § 16-1005.

[3] *Id.* § 16-1005(d-1)(3)(C). *Cf. Ramirez*, 232 A.3 at 197 (Glickman, J., dissenting) (arguing that "once a petitioner has satisfied the standard for the issuance of a CPO, she does not need to show a danger that the respondent will commit another crime against her to be entitled to an extension of the CPO based on a showing that its remedial measures are still warranted to protect her from other harms attributable to the respondent and to ensure her wellbeing").

[4] D.C. Code § 16-1005(d-1)(2).

[5] *See* Council of the District of Columbia, Committee on the Judiciary & Public Safety, Report on Bill 23-0181, the "Intrafamily Offenses and Anti-Stalking Orders Amendment Act of 2020" at 7 (quoting *Ramirez*'s "good cause" standard in its background summary of what was then the "current" law that the new Act would amend).

The majority opinion also states that a trial court is empowered to issue a CPO that is effective for "up to one year," quoting former D.C. Code §16-1005(d). *Ante* at 10. That too has been changed. As amended, subsection (d) now states, "A civil protection order issued pursuant to this section shall remain in effect for an initial period not to exceed 2 years"; and new subsection (d-1)(3) provides that extensions may even be "longer than 2 years."

My second reason for not joining the majority opinion is that I am not persuaded the trial judge abused her discretion or otherwise erred in the proceedings on remand. When this case was first before this court in 2019, we found no error in the judge's rejection of Ms. Carome's allegation that Mr. Carome assaulted her on October 10, 2017. We remanded only for the judge to consider further whether Ms. Carome should be granted a CPO based on Mr. Carome's destruction of her porcelain toothbrush holder on that date. We explained that "the judge's findings fail to discuss this admitted conduct or explain why it did not establish the commission of an intrafamily offense [i.e., malicious destruction of property] and (considered in conjunction with the 'entire mosaic,' including any past destructive acts by Mr. Carome) justify issuance of a CPO."[6]

---

[6] *Carome v. Carome*, No. 18-FM-368 (Apr. 4, 2019) at 6 (hereinafter, *Carome I*).

The majority opinion now faults the trial judge for not explicitly considering Mr. Carome's two "past destructive acts" in reaching her threshold determination on remand that his destruction of his wife's toothbrush holder on October 17, 2017, did not amount to malicious destruction of her property. As the majority concedes, the judge soundly based that determination on her assessment of Ms. Carome's lack of credibility, an assessment we cannot "second guess."[7] *Ante* at 17. The evidence before the judge unquestionably supported her finding that Ms. Carome provoked her husband and that he responded proportionately, hence not maliciously. In *Carome I*, this court perceived that Mr. Carome's destructive acts one to four years earlier had "scant bearing" on whether he committed an intrafamily offense on October 10, 2017; and we *held* that the trial judge *did not* abuse her discretion by not discussing those past acts in determining the answer to that threshold question. We explained:

> We are not persuaded by Ms. Carome's argument that the judge's credibility determination was flawed by her failure to discuss Mr. Carome's history of abusive behavior prior to the October 10 incident. While the trial judge should consider the "entire mosaic" of the parties' relationship in determining the ultimate question of whether a petitioner

---

[7] *See, e.g.*, *Karim v. Gunn*, 999 A.2d 888, 890 (D.C. 2010) ("[W]e are in no position to second-guess the judge's . . . credibility findings."); *Walker v. United States*, 167 A.3d 1191, 1210 (D.C. 2017) ("As a rule, a trial judge's witness credibility determinations are virtually unreviewable, and we will not redetermine the credibility of witnesses where the trial court had the opportunity to observe their demeanor and form a conclusion." (cleaned up)).

has shown good cause for the issuance of a CPO by a preponderance of the evidence, that does not necessarily mean the history is probative of the threshold question — whether the petitioner has proven her allegation that the respondent committed or threatened to commit an intrafamily offense against her. Mr. Carome's actions on a few occasions one to four years earlier have scant bearing on what he did on October 10, 2017. We are satisfied that the judge did not abuse her discretion in not explicitly discussing the prior history of the parties in determining whether an intrafamily offense occurred on October 10.[8]

This is the law of the case. I do not think the trial judge can be faulted for adhering to it on remand.[9] Nor do I find it plausible that further consideration of Mr. Carome's prior acts reasonably might change the judge's determination that Ms. Carome did not carry her burden of proving he committed an intrafamily offense against her on October 10, 2017.

The majority opinion also faults the trial judge for declining to take evidence on remand of acts Mr. Carome allegedly committed *after* October 10, 2017. The judge did not do so because she concluded that those acts "would not impact the

---

[8] *Carome I* at 5.

[9] *See also, e.g.*, *Willis v. United States*, 692 A.2d 1380, 1382 (D.C. 1997) ("We reiterate the proposition that the trial court must follow the mandate that issues from this court on remand. '[T]he mandate of an appeals court precludes the [trial] court on remand from reconsidering matters which were either expressly or implicitly disposed of upon appeal.'" (quoting *United States v. Miller*, 822 F.2d 828, 832 (9th Cir. 1987))).

Court's determination that Mr. Carome did not commit any of the criminal offenses alleged in [Ms. Carome's] petition." In *Carome I*, this court left it to the trial judge's discretion whether to "conduct further proceedings to determine whether there have been any new developments since the last hearing that would affect Ms. Carome's petition."[10] Taking that authorization seriously, the judge held a status hearing on August 8, 2019, at which she acknowledged the need to consider the entire relevant "mosaic" and pressed Ms. Carome's counsel on whether there were new developments of relevance.[11]

In the colloquy that followed, Ms. Carome's counsel expressed the view that the evidence previously before the court had already established that Mr. Carome committed an intrafamily offense on October 10, 2017 — what counsel called the

---

[10] *Carome I* at 7.

[11] "What I'm curious about," the judge told counsel, "is what events, or information after the trial that you are asking me to consider, but, I think, importantly, whether I should consider anything that happened after the trial. And so, without necessarily giving me all the specifics of what you may be asking me to consider, . . . is if you could give me some idea of sort of categories of information, or events that you think you would be seeking to introduce." The judge reiterated that "I'm going to give the parties an opportunity if . . . there should be new evidence, and new information, and new testimony presented to hear you all on that." "I understand the Court of Appeals decision what they're asking me to do," the judge added, "as it relates to the destruction of property count. It's the question of whether or not these [subsequent] incidents that are being raised by the petitioner need to be part of the new consideration, right."

"first" issue — and that the subsequent events were *not* relevant to that issue, but to the "second" issue of whether there was good cause for a CPO to issue. When Ms. Carome's counsel then proffered subsequent misconduct by Mr. Carome, it turned out that none of it involved destruction of property or what the majority opinion calls "[e]vidence of similar acts without . . . provocation." *Ante* at 17. Ms. Carome's counsel did not contend that *any* subsequent behavior by Mr. Carome was relevant to whether he committed malicious destruction of property on October 10, 2017.[12]

On this record, I think it was reasonable and within the trial judge's discretion to conclude an evidentiary hearing was unnecessary because Mr. Carome's alleged acts after October 10, 2017, had no bearing on whether he maliciously destroyed Ms. Carome's toothbrush holder on that date. In my view the alleged actions would not have "shed [any] new light on the issue of provocation." *Ante* at 16. And given this record, I cannot agree that the trial judge "impose[d] artificial temporal restrictions

---

[12] As subsequent misconduct by Mr. Carome, counsel proffered only the following: (1) after the trial court initially *denied* Ms. Carome's request for a CPO, and Mr. Carome was under no obligation to stay away from her or their home, he "began showing up at the marital residence where Ms. Carome was living," allegedly "invading her privacy," until he "stopped coming to the house after the Court of Appeals remanded the case"; (2) an "incident" in March 2018 led Ms. Carome to file another CPO petition, which the Superior Court dismissed *with prejudice* — the claim apparently being that Mr. Carome went to his home to recover *his* personal property at a time when Ms. Carome was *not* there; and (3) in December 2018 Mr. Carome allegedly kissed Ms. Carome's college-age daughter against her will.

on evidence that [could have] rebut[ted] that defense," *ante* at 15, or that the judge "declined to hear any new evidence that may have been probative of the malicious destruction of property and provocation issues." *Ante* at 17.

For the foregoing reasons, I respectfully dissent.